## SMITH, ADMR., v. ALLMON.

BONDS—NOTES—PAYMENTS—RECEIPTS—ACCOUNT STATED.—Statement of amount due on bond by attorney of payee, under facts here, held not to have the effect of an account stated. Payments against a dead man's estate proved alone in parol should be subjected to rigid scutiny and allowed with extreme caution.

Credit endorsed on bond and afterwards changed by indorsement across it of application of part of fund to another debt between the parties signed by both, is stronger than an ordinary receipt, yet it is subject to correction by proof of clear mistake.

Before DANTZLER, J., Marlboro, July, 1905.     Affirmed.

Action by Wm. M. Smith, as administrator of Peter T. Smith, and Mary Smith, against Jacob Allmon.     From Circuit decree, defendant appeals.

*Mr. T. B. Boucher,* for appellant, cites: *Signature obtained under abuse of confidence and misapprehension is not binding:* 32 S. E., 433.

*Mr. Knox Livingston,* contra, cites: *Mistake and fraud are affirmative defenses and must be established by clear proof:* 20 Ency., 2 ed., 831; 13 S. C., 340; 42 S. C., 1; 39 S. C., 290; 63 S. C., 410; 21 S. C., 235; 2 Strob. Eq., 148.

July 9, 1906. The opinion of the Court was delivered by

Mr. Justice Woods. The plaintiff, William M. Smith, brought this action as administrator of the estate of Peter T. Smith to foreclose a mortgage given by the defendant to Mary Smith, under the impression that Peter T. Smith was the owner of the mortgage at the time of his death, as assignee of Mary Smith, who was his mother. The discovery having been afterward made that there was no assignment, the complaint was amended by making William M. Smith a party plaintiff as administrator of the estate of Mary Smith as well as of Peter T. Smith. The case turns entirely on whether certain payments set up by the defendant should be allowed. The bond and mortgage in suit were given August 24, 1874, for the purchase money of the tract of land described in the mortgage, and called for the payment of "two thousand dollars in three equal instalments, the first to be paid on the first day of January, A. D. 1875, the second on the first day of January, A. D. 1876, and the third on the first day of January, A. D. 1877, with interest on the whole amount from the first day of January last, at the rate of seven per cent. per annum until the first day of January next, and thereafter at the rate of twelve per cent. per annum payable annually, until the whole amount be paid." On the same day, August 24, 1874, the defendant gave to Peter T. Smith a bond and mortgage for $800, representing the purchase money of another tract of land, and containing stipulations as to instalments and rate of interest similar to those in the bond and mortgage to Mary Smith. Peter T. Smith was the agent of his mother, and he alone dealt with Allmon in relation to his own mortgage and that of his mother also, receiving all payments made on either paper. The mortgage

to Peter T. Smith has been produced by the defendant with an indorsement of satisfaction, dated April 21, 1881; but in order to ascertain what credits should be made on account of the papers now in suit, it is necessary to find all the payments and what portion of them it took to satisfy the cancelled mortgage.

We consider, first, the alleged payments of $237.50, proceeds of sale of five bales of cotton, and $80, the value of four oxen. In this connection consideration must be given to the force and effect of the following statement made at the instance of Allmon by Judge C. P. Townsend, of the law firm of Townsend & Livingston, in whose charge as his attorney Smith left his papers:

"Balance due on large bond 19th Jan., 1880..$1,501 87
                    J. C .Allmon.
Balance due on small bond 19th Jan., 1880...   848 56."

The referee, Hon. J. H. Hudson, held that this statement should be taken as correct, and adopted as a new starting point for the computation, expressing his views in these words:

"I conclude that these baalnces were correct, being made in the presence of both parties and accepted by them. I also conclude that the prices of the four oxen ($80) and of the five bales of cotton, about $237.50, were computed by Judge Townsend as credits on the bond in suit, in finding the balances of one thousand five hundred and one and 87-100 dollars ($1,501.87), on the 19th day of January, 1880, which said balances I find to be correct and forming the proper basis for subsequent calculations—that is, a new starting point."

The Circuit Judge took a different view, and held that the memorandum should be disregarded. Judge Townsend testified he had no recollection of the matter beyond the fact that as a member of the firm of Townsend & Livingston he was attorney for Smith, and that Smith held two mortgages given by Allmon. The evidence does not warrant an infer-

ence that Smith scrutinized this statement, or that he made any representation as to its correctness to Allmon's prejudice, or that either party treated it as an account stated, binding upon both in future settlement. But even if the parties had agreed that it should have the effect of an account stated, it could not be binding on either of them if clearly shown to be founded on erroneous calculation. If, however, computation based on the allowance of the disputed credits above mentioned showed the amounts due January 19, 1880, to be approximately those set down on the memorandum, this would be very strong evidence that Smith and Allmon then agreed on these credits. But the difficulty is that calculation shows if all credits claimed are allowed, the aggregate due on the two bonds would be very different from the figures of Judge Townsend's statement. No plan of calculation has been suggested and we have been able to discover none which would approximate his result. It seems, therefore, to amount to a demonstration that this slip of paper does not furnish the true amount due on the mortgages on January 19, 1880, and it is impossible to draw from it any conclusion one way or the other as to these credits. It is but due to Judge Townsend to say that if his purpose had been to make a statement binding on the parties, it would have resulted in a much more formal paper than the one here presented, showing the computation by which the result was reached, accompanied by some acknowledgment by the parties of its correctness.

But the defendant further relies on the direct testimony of Joseph Conwell and Peter Haley to establish these credits. The former testified he delivered for Allmon four oxen in 1875 and three bales of cotton in 1876 to Smith, who said he would put them on Allmon's debt. Haley testified to the same effect as to the cotton; and Evans Quick to hearing Smith acknowledge that Allmon was entitled to credit for the oxen. No prudent man will deny that alleged payments set up against a dead man's estate, resting on such evidence as this, should be subjected to rigid scrutiny and allowed

with extreme caution. Many of our people are foolishly careless as to the preservation of receipts and other valuable papers, but we cannot help thinking it is very significant that the defendant produces no receipts for these payments and does not even claim that he ever had any, and that, though the bond and mortgage were paid and satisfied, he produces the mortgage so marked, while the bond on which the credits were entered and which should be in his possession, is not produced or accounted for. Another very strong argument against these credits is that subsequently, as we shall hereafter see, Allmon made an admission as to the amount due on the large bond, which was entirely inconsistent with the allowance of these credits. The burden was on the defendant to establish these credits, and we think he has failed to do so.

The plaintiff admits the defendant was entitled to credit on the small bond, April 21, 1881, for proceeds of sale of land, paid by Miss Munnerlyn, amounting to $670; and allowing this credit, the amount due June 20, 1881, on that bond was $1,047.84, as will appear from the following statement, which is made in accordance with the rule laid down in *Miller* v. *Hall,* 18 S. C., 141:

Bond ...........,...............................$ 800 00
Interest Jan. 1, 1874, to Jan. 1, 1875, at
   7 per cent........................................$56 00
Interest on $56 to Apr. 21, 1881, at 12 .
   per cent. ...................................... 42 37
                              98 37
Simple interest on $800, Jan. 1, 1875, to Apr. 21,
   1881, at 12 per cent.............................. 605 33
Annual interest on $800, Jan. 1, 1876, to Apr. 21,
   1881, at 12 per cent.............................. 193 92
Credit Apr. 21, 1881......................... 670 00
                                       $1,027 62

Interest on $800 from Apr. 21, 1881, to June 20,
   1881, at 12 per cent.......................    15  74
Interest on $227.62, accrued interest from Apr. 21,
   1881, to June 20, 1881, at 12 per cent..........     4  48 .

                                      $1,047  84

On June 20, 1881, the day to which this computation of
the small bond reaches, the defendant, as all agree, was enti-
tled to credit for $1,336.73, the proceeds of sale of cotton
turned over to P. T. Smith; and it is about this payment
that the main difference arises. It was first entered by
Smith as a credit for the whole amount on the large bond
now in suit, but across the receipt is written the following
undated statement in red ink, signed by both Smith and All-
mon: "This receipt is changed to the one below by the con-
sent of the parties, the difference being credited on another
bond, which the said Smith holds against the said Allmon,
and in full payment thereof." Then follows:

"304.52.   Rec'd June 20, 1881, of Jacob C. Allmon, three
hundred and four 52-100 dollars on the within bond.   P. T.
Smith.   Attest J. Evans Quick."

The defendant contends that before this the small mort-
gage for $800 had been cancelled as paid in full on April
21, 1881, the payment of $670 on that date being, as he
alleges, sufficient for that purpose, and that, therefore, the
whole sum of $1,336.73 must necessarily be credited on the
bond in suit. But as we have seen, the defendant's conten-
tion on this point is not well supported, and at the date of
this last payment there was actually due on the smaller bond
$1,047.84. Smith had under his control at this time the
cotton from the sale of which this sum of $1,336.73 was sub-
sequently derived, and being sure of receiving payment from
this source, it was quite natural and reasonable that he should
anticipate the actual receipt of the money and cancel the
small mortgage, in order to allow Allmon to make good title
to the land covered by it. But, on the other hand, plaintiff

cannot maintain his position that Allmon is absolutely bound to stand to the precise words and figures of the correction made by his consent in the receipt, and that he, therefore, cannot claim more than a credit of $304.52 on the bond in suit. Without doubt this red ink statement as to the true credit to be allowed is very strong evidence and *prima facie* binding on both parties, the presumption that it is correct being stronger than in the case of an ordinary receipt, because it is in the nature of a receipt, which indicates reconsideration and readjustment by both parties. Yet it is subject to correction by clear proof of mistake, and the clearest possible proof of mistake would be that the computation of the debt, allowing only the credits, which the plaintiff does not dispute, showed that the defendant was entitled to a greater credit than $304.52 on the bond in suit. But so far from this being the case the following statement shows there was a small error in favor of defendant, and that he was really entitled to credit on the large bond now in suit for $288.89 instead of $304.52, which was given:

The credit June 20, 1881, was...............∴..$1,336 73
Applicable to amount due on small bond as shown
    by statement above.......................... 1,047 84

Applicable to bond in suit June 20, 1881........$ 288 89

That the result of the calculation of the two bonds, without allowance of the credits of $237.50 and $80 now claimed, approximates so closely the result indicated by the red ink indorsement, tends strongly to the conviction that defendant did not then consider he was entitled to the disputed credits of $237.50 and $80. This conviction is not weakened by any proof of deception or imposition in procuring his signature to the red ink indorsement, for there was really no such proof.

We have been at some pains to ascertain the true credits on the debt, as far as they are in dispute, and if the defendant has not received the benefit of all his payments he is the

victim of his own gross negligence in not taking and preserving receipts or other evidences of payment.

It is the judgment of this Court, that the judgment of the Circuit Court be affirmed.