AMERICAN OIL CO. *v.* NEILL ET AL.

No. 19.  Argued January 25–26, 1965.—Decided April 26, 1965.

*Frank I. Goodman* argued the cause for appellant and for the United States, as *amicus curiae.* With him on the briefs were *Solicitor General Cox, Assistant Attorney General Oberdorfer, I. Henry Kutz* and *Robert A. Bernstein* for the United States, and *Calvin Dworshak* for appellant.

*Allan G. Shepard,* Attorney General of Idaho, argued the cause for appellees. With him on the brief were *William M. Smith,* Assistant Attorney General, *Faber F. Tway* and *Anton Hohler.*

MR. CHIEF JUSTICE WARREN delivered the opinion of the Court.

This appeal presents the issue of whether, where a licensed Idaho dealer in motor fuels sells and transfers gasoline outside the State for importation into the State by an agency of the Federal Government, the State of Idaho may constitutionally impose an excise tax upon the transaction on the theory that the dealer constructively "receives" the gasoline in Idaho upon its importation.

On June 26, 1959, invitations for bids were issued by the United States Government from the Regional Office of the General Services Administration (GSA) at Seattle, Washington, covering some 607 separate items—each designed to supply a distinct motor fuel need of a particular government agency at one of a multitude of locations in Idaho, Montana, Oregon, and Washington for the period from November 1, 1959, through October 31, 1960. Bids on each item were to be submitted to the Seattle office and were to be evaluated on their individual merits and accepted or rejected without reference to other items.

Appellant's predecessor in interest, Utah Oil Refining Company (Utah Oil), is a Delaware corporation. Pursuant to the GSA invitation it transmitted bids from its offices in Salt Lake City, Utah, on various items. Included were numbers 63 and 64 dealing with the supply of

approximately 200,000 and 1,000,000 gallons of gasoline, respectively, for the use of the Atomic Energy Commission (AEC) at Idaho Falls, Idaho. Bids on these two items were submitted in alternative form, quoting a price f. o. b. Salt Lake City and a price f. o. b. the AEC activity site in Idaho.[1]

On October 26, 1959, Utah Oil's bids on the two items were accepted in Seattle by the GSA. Under the terms of the contract gasoline was to be sold to the AEC at a designated price f. o. b. Bulk Plant, Salt Lake City. The total price did not include any state tax but provision was made for an increase in the contract price if any such tax was imposed.

In accordance with the contract, the AEC, or its operating agent, Phillips Petroleum Company, periodically ordered some 1,436,355 gallons of gasoline. Delivery was effected by Utah Oil in Salt Lake City. Although the facts subsequent to delivery are in dispute, it appears that thereafter common carriers, selected and paid by the AEC, transported the fuel from Salt Lake City to Idaho Falls where it was placed in AEC-owned storage tanks and used in AEC operations in Idaho.[2]

During the time that Utah Oil was performing the contract, it was authorized to do business in the State of Idaho as a "licensed dealer" as defined by the Idaho Motor Fuels Tax Act, as amended, Idaho Code, Tit. 49, c. 12 (1957). This Act imposes an initial requirement that all motor fuel "dealers" hold a permit issued by the

---

[1] Although the invitation for bids issued by the GSA proposed the alternative delivery points it was discretionary with each bidder as to whether or not quotations for each point were submitted.

[2] On the ground that the tax was not a "use tax" in the usual sense, the trial judge declined the offer of proof as to what occurred after delivery which was tendered by the State Tax Collector. The Idaho Supreme Court concurred, holding that such evidence was immaterial due to the fact that the status of Phillips Petroleum was only that of a contractor for the AEC.

State Tax Collector.  To procure such a permit one need only fill out an application, post bond, and pay a five-dollar filing fee.  Securance of a permit is necessary before any dealer can "import, receive, use, sell or distribute any motor fuels" within the State.  Idaho Code Ann. § 49–1202 (1957).

A "dealer" is defined by § 49–1201 as any person who first receives motor fuels in the State within the meaning of the word "received." [3]  As a dealer, one is required to make monthly reports to the State Tax Collector and pay an excise tax of six cents per gallon on all motor fuels "received" within the ambit of § 49–1201 (g).  The Act then provides that the proceeds of the tax are to be placed into a state highway fund.

During its performance of the contracts Utah Oil submitted the required monthly reports.  The State Tax Collector thereupon insisted that payment of the six-cent tax be forthcoming pursuant to § 49–1201 (g) due to the fact

---

[3] The section provides, *inter alia:* "2. Motor fuel imported into this state other than that placed in storage at refineries or pipe line terminals in this state shall be considered to be received immediately after the same is unloaded and by the person who is the owner thereof at such time if such person is a licensed dealer; otherwise such motor fuel shall be considered to be received by the person who owned such fuel immediately prior to its being unloaded; provided, however, motor fuels shipped or brought into this state by a qualified dealer, which fuel is sold and delivered in this state directly to a person who is not the holder of an uncanceled dealer permit, shall be considered to have been received by the dealer shipping or bringing the same into this state; *further provided that motor fuel which is in any manner supplied, sold or furnished to any person or agency, whatsoever, not the holder of an uncanceled Idaho dealer permit, by an Idaho licensed dealer, for importation into the state of Idaho from a point of origin outside the state, shall be considered to be received by the Idaho licensed dealer so supplying, selling, or furnishing such motor fuel, immediately after the imported motor fuel has been unloaded in the state of Idaho."* (Emphasis added.)  Idaho Code Ann. § 49–1201 (g) (Supp. 1963).

that Utah Oil was a licensed dealer in the State of Idaho which had sold motor fuel to an agency "not the holder of [a] . . . dealer permit . . . for importation into the state . . . from a point of origin outside the state." Taxes totaling $86,181.30 were paid under protest. The instant litigation was then initiated in the District Court of the Third Judicial District of the State of Idaho for refund. Appellant claimed at the threshold that the imposition of the tax on an out-of-state sale to the Federal Government violated the Due Process, Commerce, and Supremacy Clauses of the Constitution.

The trial judge granted summary judgment for the appellant finding that the imposition of the tax violated the Due Process and Commerce Clauses since it was applied to a sale made outside of Idaho. On appeal the Idaho Supreme Court reversed, finding the constitutional objections to be without merit. 86 Idaho 7, 383 P. 2d 350. We noted probable jurisdiction, 377 U. S. 962, because the validity of a state statute had been upheld over an objection that it was repugnant to the Constitution. 28 U. S. C. § 1257 (2) (1958 ed.).

## I.

When passing on the constitutionality of a state taxing scheme it is firmly established that this Court concerns itself with the practical operation of the tax, that is, substance rather than form. *Wisconsin* v. *J. C. Penney Co.,* 311 U. S. 435, 443–444; *Lawrence* v. *State Tax Comm'n,* 286 U. S. 276, 280, and cases cited therein. This approach requires us to determine the ultimate effect of the law as applied and enforced by a State or, in other words, to find the operating incidence of the tax. *Connecticut Gen. Life Ins. Co.* v. *Johnson,* 303 U. S. 77, 80.

When a state court has made its own definitive determination as to the operating incidence, our task is simplified. We give this finding great weight in determining the nat-

ural effect of a statute, and if it is consistent with the statute's reasonable interpretation it will be deemed conclusive.[4]   Such a situation is manifest in the instant case.

The trial judge found that the operating incidence of the tax clearly fell on the dealer:

> "[T]he dealer is not in any way required to pass the tax on or collect it from the consumer, and the ultimate purchaser or consumer has no responsibility whatsoever for payment of the tax.   While it may be the overall policy of the state to collect a tax of 6¢ per gallon on all gasoline used to propel motor vehicles over Idaho state highways, the taxable event or transaction is not the use by the local consumer or purchaser, but the 'receipt' of the gas by the dealer.   It cannot be said under this statute that the licensed dealer is the mere collector of a tax from the purchaser or user . . . ."

This conclusion was further buttressed by finding that the Idaho administrative interpretation of the statute in the past has been to treat it as a privilege tax upon the dealer.[5]

On appeal the Idaho Supreme Court left the trial court's conclusions undisturbed.   Moreover, the State Attorney General in his brief before this Court expressly states that the tax "is a privilege tax, the incidence of

---

[4] Compare *Railway Express Agency, Inc.* v. *Virginia,* 347 U. S. 359, 369–372 (dissenting opinion), with *Railway Express Agency, Inc.* v. *Virginia,* 358 U. S. 434, 440–441.

[5] Letter from Don J. McClenahan, Assistant Attorney General of the State of Idaho, to Bigelow Boysen, May 9, 1950.   The conclusion was reached in this opinion that "the act places the legal incidence of the tax upon the dealer . . . and not on the vendee or consumer."   A decision by the Comptroller General also agrees with this conclusion.   24 Comp. Gen. 163 (1944).

which falls on the dealer . . . ."[6]  This unanimity between the courts of Idaho and its agencies is to us in accord with the literal interpretation of the Act inasmuch as § 49–1210 clearly states that "each dealer shall pay to the commissioner an excise tax of six cents per gallon on all motor fuels . . ." with no coinciding provision passing the burden of the tax to the purchaser.  We therefore give the findings below controlling effect and hold that the incidence of the tax falls on the dealer.

## II.

Although the Idaho Supreme Court agreed with the trial judge that the taxed events were the sales of gasoline in Utah, two factors were considered sufficient to bring the transactions within the purview of Idaho's taxing power. First, Utah Oil sold the gasoline with knowledge that it would be imported into and used within Idaho; and, second, Utah Oil had been authorized to do business in Idaho having applied for and received a dealer's permit "authorizing it to enter into the Idaho market as a distributor of motor fuels . . . ."  86 Idaho, at 23, 383 P. 2d, at 360.  We conclude that these considerations are insufficient to uphold the tax as against attack under the Due Process Clause.

The mere fact that Utah Oil knew that the gasoline was to be imported into Idaho merits little discussion. More than once this Court has struck down taxes directly imposed on or resulting from out-of-state sales which were held to be insufficiently related to activities within the taxing State, despite the fact that the vendor knew that the goods were destined for use in that State.  *Miller Bros. Co.* v. *Maryland,* 347 U. S. 340 (use tax); *Norton Co.* v. *Department of Revenue,* 340 U. S. 534 (gross re-

---

[6] Brief for the appellee, p. 5.

ceipts tax); *McLeod* v. *J. E. Dilworth Co.*, 322 U. S. 327
(sales tax).

These cases have also firmly established the doctrine
that when a tax is imposed on an out-of-state vendor,
"nexus" between the taxing State and the taxpayer is the
outstanding prerequisite on state power to tax. Consistent with this requirement there must be "some definite link, some minimum connection, between a state and
the person, property or transaction it seeks to tax."
*Miller Bros. Co.* v. *Maryland, supra, at* 344-345. Granted
that when a corporation, pursuant to permission given,
enters a State and proceeds to do local business the "link"
is strong. In such instances there is a strong inference
that it exists between the State and transactions which
result in economic benefits obtained from a source within
the State's territorial limits. The corporation can, however, exempt itself by a clear showing that there are no
in-state activities connected with out-of-state sales. In
such instances, the transactions are said to be "dissociated
from the local business," *Norton Co.* v. *Department of
Revenue, supra,* at 537, and therefore may not, consistent
with due process, be taxed.

In the present case it is plain that neither Utah Oil's
position as a licensed dealer in Idaho nor the fact that
it otherwise engaged in business there will suffice to
uphold the tax. Utah Oil's transfer of gasoline was unquestionably an out-of-state sale *vis-à-vis* Idaho and
entirely unconnected with its business in that State.
Each and every phase of the transaction had its locus outside of Idaho: invitations for bids were issued by the
Government in Seattle, Washington; Utah Oil submitted
its bids from Salt Lake City; the bids were accepted in
Seattle; the contract called for delivery of the gasoline
f. o. b. Salt Lake City; Utah Oil delivered the gasoline to
Salt Lake City, and it was there that title passed. There
is no reason to suppose, nor does the record in any way

indicate, that Utah Oil's activities in Idaho contributed in any way to the procurement or performance of the contract. Compare *Norton Co.* v. *Department of Revenue, supra,* with *General Motors Corp.* v. *Washington,* 377 U. S. 436.

The Idaho Supreme Court was fully cognizant of these facts but chose to characterize Utah Oil's dealer's permit as authorizing it "to engage in the very activity it now claims is exempt from the tax." 86 Idaho, at 23, 383 P. 2d, at 360. This statement, however, fails to reflect the clear holding by this Court that the granting by a State "of the privilege of doing business there and its consequent authority to tax the privilege do not withdraw from the protection of the due process clause the privilege" of doing business elsewhere. *Connecticut Gen. Life Ins. Co.* v. *Johnson, supra,* at 82. This is exactly the situation present in the instant case. Under the circumstances we hold the fact that Utah Oil was the holder of an Idaho dealer's permit to be purely fortuitous.

Since we decide that the exacted tax violates the Due Process Clause, there is no need for discussion of constitutionality under the Commerce or Supremacy Clause. The decision of the Idaho Supreme Court is reversed and the case remanded to that court for proceedings not inconsistent with this opinion.

*Reversed and remanded.*

Mr. Justice Black dissents.