### HOLMES v. SIMPSON, Tax Collector, et al.
No. 656542.

Circuit Court, Duval County.

May 5, 1967.

William C. Bostwick, Jacksonville, for plaintiff.

W. Joe Sears, Jr., Stallings & Marr, J. Henry Blount, Walter C. Shea and Rogers, Towers, Bailey, Jones & Gay, all of Jacksonville, for defendants.

WILLIAM L. DURDEN, Circuit Judge.

*Order on motions:* The cardinal question before the court at this time is the alleged unconstitutionality of the limited ad valorem tax millage rate on intangible personal property. It is contended that this preferential classification constitutes a discrimination so unreasonable as to deny the plaintiff and other real property owners equal protection of the law as commanded by both the state and federal constitutions.

This point is presented by motions of the defendants attacking the legal sufficiency of certain counts of the complaint.

The present scheme of taxation in Florida is severely limited and restricted. It is a system which relies heavily on the somewhat archaic Anglo-American institution of ad valorem taxation. I say "somewhat archaic" because it over-emphasizes real property which was about the only known form of economic affluence until the nineteenth century and under-emphasizes commerce which in its generic sense is the cornerstone of American economic success. Be that as it may, this court is to construe and apply the law — not to make it.

Nevertheless, a little discussion is relevant to the issue and is necessary to tip the balance of the scales of justice.

Florida has a homestead exemption — the largest in the nation and only five or six other states even give recognition to this doctrine.

Florida has a constitutional prohibition against an income tax.

Florida restricts itself in the collection of an inheritance tax to the minimum amount forced upon it by federal law.

There are many other exemptions and restrictions but a recitation of them would only serve to further emphasize that ad valorem taxation occupies the center ring in the circus of revenue assessment and collection.

As long ago as the summer of 1949 the University of Florida Law Review published a legislative note contained in volume 2 at page 262, wherein it is stated —

A state that constitutionally denies itself the right to levy income taxes, estate or inheritance taxes on residents in excess of the credit the United States may allow on similar taxes, or state ad valorem taxes on real or tangible personal property, *may expect revenue problems*. The state of Florida has retained, however, and does exercise, the power to levy an intangible personal property tax; and the current demand for increased revenue suggests a study of the operation of the laws covering this tax, in order to determine its success as a revenue producer. (Italics added.)

## Ad valorem taxation

The Latin term "ad valorem" literally means *according to value*. An ad valorem tax means a tax or duty upon the value of the article or thing subject to taxation. Black's Law Dictionary, Fourth Edition, page 58.

There are obviously two factors to be used in arriving at the ultimate tax; one being valuation of the property and the other being the millage rate. Perfect equality in a system of ad valorem taxation requires uniformity in valuation and uniformity in the millage rate to be applied. It is self-evident that where absolute equality does not exist in either factor of the formula some taxpayers will pay more than others on the same amount of wealth. The question before the court then is whether or not there may be an imperfect or preferential system of ad valorem taxation without violating the equal protection clauses of the state and federal constitutions.

## Property subject to ad valorem taxation

There are three classes of property subject to ad valorem taxation — real property, tangible personal property and intangible personal property. Their statutory definitions will be set forth in the following paragraphs. "Unless expressly exempted, all real and personal property in this state and all personal property belonging to persons residing in this state shall be subject to taxation in the manner provided by law". Section 192.01, Florida Statutes.

## Real property

"For the purpose of taxation 'real property' shall be construed to include lands and all buildings, fixtures and other improvements thereon. When used in connection with taxation the terms 'land' and 'real estate' shall be construed as having the same meaning as real property above defined'. Section 192.02.

## Personal property

"For the purpose of taxation 'personal property' shall be construed to include all goods and chattels, monies and effects,

debts due or to become due from solvent debtors whether on account, contract, note or otherwise and all public stocks or shares in incorporated or unincorporated companies". Section 192.03.

### Intangible personal property

" 'Intangible personal property' is hereby defined as all personal property which is not in itself intrinsically valuable but which derives its chief value from that which it represents". Section 199.011.

### Classification of intangible personal property

For the purposes of taxation, intangible personal property is divided into four separate and distinct classes and the annual rate of taxation varies from one-tenth of one mill minimum to a maximum of two mills. Section 199.011.

### Florida constitutional equal protection provision

Section 1 of the Declaration of Rights of the Florida constitution provides that —

All men are equal before the law and have certain inalienable rights among which are those of enjoying and defending life and liberty, acquiring, possessing and protecting property, and pursuing happiness and obtaining safety.

### Cases construing equal protection clause

In State, ex rel. Spence v. Bryan, 87 Fla. 56, 99 So. 327, the court said —

The constitutional right of equal protection of the laws means that every one is entitled to stand before the law on equal terms with, to enjoy the same rights as belong to, and to bear the same burdens as are imposed upon others in a like situation.

The equal protection clause of the fourteenth amendment to the federal constitution applies to the exercise of all powers of the state which can affect an individual or his property, including the power of taxation. State, ex rel. Vars v. Knott, 135 Fla. 206, 184 So. 752.

Organic provision as to equal protection of law does not forbid just and reasonable distinctions and classifications. Cahoon v. Smith, 99 Fla. 1174, 128 So. 632.

Equal protection clause of fourteenth amendment to federal constitution does not forbid classification in statute. State, ex rel. Vars v. Knott, 135 Fla. 206, 184 So. 752, appeal dismissed State, ex rel. Vars v. Knott, 60 S.Ct. 72, 308 U.S. 506, 84 L. Ed. 433.

Constitutional guaranty of "equal protection of the law" does not preclude the legislature from making proper and reasonable classifications so long as such classifications are not arbitrary, unreasonable or unjustly discriminatory. Loftin v. Crowley's, Inc., 150 Fla. 836, 8 So. 2d 909, 142 A.L.R. 626, certiorari denied 63 S.Ct. 60, 317 U.S. 661, 87 L. Ed. 531.

One of the latest Florida cases is that of King Cole Inc. v. Bryant, S.C., 178 So. 2d 2. Mr. Justice Thornal stated —

> We lay aside any extended discussion of the state's power to select the subjects of excise taxation. It is sufficient to note that the power to classify for purposes of excise taxation is of wide range and flexibility. Once exercised it will not be disturbed unless the result is plainly unequal, arbitrary or discriminatory.

### Florida constitutional provisions on taxation and finance

Florida has had five constitutions. The constitutions of 1838, 1861, 1865 simply required the General Assembly to devise and adopt a system of revenue "having regard to an equal and uniform mode of taxation, to be general throughout the state".

The constitution of 1868 and the present constitution of 1885 originally provided that — "The Legislature shall provide for a uniform and equal rate of taxation and shall prescribe such regulations as shall secure a just valuation of all property, both real and personal ***".

At the general election of 1924 this section was amended to provide for a separate classification of intangible property and granted authority to the Florida legislature in permissive terms stating that "It may provide for special rate or rates on intangible personal property but *** shall not exceed five mills on the dollar."

This provision was further amended in the 1944 general election to provide for a limitation of two mills.

In Porter v. First National Bank, 119 So. 130, the Supreme Court of Florida held that the 1924 amendment was not self-executing but simply permitted the legislature to provide for special rates of taxation on intangible property but that until it acted such intangibles should be assessed and taxed the same as other personal property — and because the language of the 1944 amendment is identical except for the change in millage rate it is assumed that the same rule of law applies to the 1944 amendment.

## Federal constitution

The fourteenth amendment to the constitution of the United States, in part, provides that —

No state shall make or enforce any law which shall abridge the privileges or immunities of citizens of the United States; nor shall any State deprive any person of life, liberty, or property without due process of law nor deny to any person within its jurisdiction the equal protection of the laws.

## Classification of property — federal decisions

The Supreme Court of the United States has clearly recognized the power of the state to classify for the purpose of taxation. In Frank Walters v. City of St. Louis, 347 U.S. 231, 98 L.Ed. 660 74 S.C. 505, the court stated —

The power of the State to classify according to occupation for the purpose of taxation is broad. Equal protection does not require identity of treatment. It only requires that classification rest on real and not feigned differences, that the distinction have some relevance to the purpose for which the classification is made, and that the different treatments be not so disparate, relative to the difference in classification, as to be wholly arbitrary.

Our disapproval of the wisdom or fairness of so doing is not a ground for interference. When a state legislature acts within the scope of its authority it is responsible to the people, and their right to change the agents to whom they have entrusted the power is ordinarily deemed a sufficient check upon its abuse. When the constituted authority of the State undertakes to exert the taxing power, and the question of the validity of its action is brought before this court, every presumption in its favor is indulged, and only clear and demonstrated usurpation of power will authorize judicial interference with legislative action.

The sole question here is whether in levying a tax on those whom it has plenary power to tax, the City has introduced classification and discriminations so unreasonable as to deny to appellants due process or equal protection of the law.

In its discretion a state may tax all, or it may tax one or some, taking care to accord to all in the same class equality of rights.

In Madden, Executor v. Kentucky, 309 U. S. 83, 60 S.Ct. 406, the court stated —

The broad discretion as to classification possessed by a legislature in the field of taxation has long been recognized. This Court fifty years ago concluded that "the Fourteenth Amendment was not intended to compel the state to adopt an iron rule of equal taxation," and the passage of time has only served to underscore the wisdom of that recognition of the large area of discretion which is needed by a legislature in formulating sound tax policies. Traditionally classification has been a device for fitting tax programs to local needs and usages in order to achieve an equitable distribution of the tax burden. It has, because of this, been pointed out that in taxation,

even more than in other fields, legislatures possess the greatest freedom in classification. Since the members of a legislature necessarily enjoy a familiarity with local conditions which this Court cannot have, the presumption of constitutionality can be overcome only by the most explicit demonstration that a classification is a hostile and oppressive discrimination against particular persons and classes. The burden is on the one attacking the legislative arrangement to negative every conceivable basis which might support it.

The Supreme Court of the United States has consistently applied the "reasonable classification" rule. In Allied Stores of Ohio v. Bowers, 358 U. S. 522, 2 L.Ed. 2d 480 (1959), the court stated —

> The States have a very wide discretion in the laying of their taxes. When dealing with their proper domestic concerns, and not trenching upon the prerogatives of the National Government or violating the guaranties of the Federal Constitution, the States have the attribute of sovereign powers in devising their fiscal systems to ensure revenue and foster their local interests. Of course, the States, in the exercise of their taxing power, are subject to the requirements of the Equal Protection Clause of the Fourteenth Amendment. But that clause imposes no iron rule of equality, prohibiting the flexibility and variety that are appropriate to reasonable schemes of state taxation.
>
> \* \* \* \*
>
> "If the selection or classification is neither capricious nor arbitrary, and rests upon some reasonable consideration of difference or policy, there is no denial of the equal protection of the law". That a statute may discriminate in favor of a certain class does not render it arbitrary if the discrimination is founded upon a reasonable distinction, or difference in state policy.

In Nashville C & St. L. R. Co. v. Browning, 310 U.S. 362, 60 S.Ct. 968, 84 L.Ed. 1254, the court stated that —

> The states may, consistently with the Federal Constitution, tax some kinds of property at higher rates than others.

The latest case in the United States Supreme Court on this subject is American Oil Company v. Neill, 380 U.S. 451, 14 L.Ed. 2d 1, 85 S.Ct. 1130. In an opinion handed down April 16, 1965, Mr. Chief Justice Warren stated —

> When passing on the constitutionality of a state taxing scheme it is firmly established that this Court concerns itself with the practical operation of the tax, that is, substance rather than form. (Citations omitted.) This approach requires us to determine the ultimate effect of the law as applied and enforced by a State or, in other words, to find the operating incidence of the tax.

In Morton Salt Company v. City of South Hutchinson (CCA 10), 159 F. 2d 897), the court significantly said as follows —

> But, however great the legislative power of taxation, it is not wholly without constitutional limitations. The due process and equal

protection clauses of the Constitution do provide some measure of protection against the abusive exaction of a tax. The test of due process, say the courts, is whether the taxing power exerted by the State bears fiscal relation to protection, opportunities and benefits given by the state. In other words, the query is, what has the state given for which it may ask return. Wisconsin v. J. C. Penney Co., supra. If the tax imposed clearly results in such a flagrant and palpable inequality between the burden imposed and the benefit received that it amounts to an arbitrary taking of property without compensation, it is said to violate the due process guaranty under the Fourteenth Amendment. All of the cases which have affirmed the broad powers of taxation have recognized these limitations, i.e., see Dane v. Jackson, supra; Henderson Bridge Co. v. Henderson City, 173 U.S. 592, 614, 19 S. Ct. 553, 43 L.Ed. 823; Houck v. Little River Dist., supra; Cooley, Sec. 144.

### Classification of property — recent Florida decisions

In Lanier v. Tyson, Fla. App., 147 So. 2d 365, text 373, the District Court of Appeal, Second District, remarked that —

> We are aware of the decisions holding that classification of property for tax purposes does not offend against the equal protection of the law guaranteed by the United States Constitution . . . nor does it [subsection (11) of section 193.11, Florida Statutes] per se contravene the uniform and equal rate and just valuations of the Florida Constitution.

In Green v. Walter, Fla., 161 So. 2d 830, text 833, the court said that —

> We are aware of no legal bar to taxation, of intangible property in a category separate and apart from the taxation of other property so long as the classification is not arbitrary or unreasonable and when all under like conditions are treated the same.

In Lanier v. Overstreet, 175 So. 2d 521, Mr. Justice Drew in his dissenting opinion posted the storm warning —

> To recognize the power of the Legislature to grant exemptions from taxation to certain classes — and that's what it amounts to — will be to destroy the ad valorem taxing system in this State and to place the burden of government on those who are not furtunate enough to be brought within a favored class.

Here, however, we are dealing with a constitutional rather than a legislative classification. Obviously this places the provision in a higher but not invulnerable status.

### Taxing schemes of other states

This court has made a cursory study of the various taxing system of the fifty states. It appears that some state constitutions provide for classification and some do not. It appears that some states provide for valuations at various ratios of fair market or

cash value and some require all assessments to be at 100%. Where property is classified different rates of taxation are sometimes provided for. Intangible personal property is treated in many different ways. In some states they are subjected to no tax whatsoever. In some states they are subjected to a very limited form of ad valorem taxation. In some states the proceeds are subjected to an income tax and in some states where there is no income tax they are subjected to what is termed a limited yield tax. There does not appear to be any general pattern but it seems that such property is favored more in some states and less in others. This study has gone a long way towards convincing the court that where a state makes a provision for classification and preferential treatment in its own constitution the legality of such a system is strongly indicated.

### Fair and equal valuations

By reason of a series of late decisions and opinions construing the constitution and statutes of the state of Florida, it has been determined that all classes of property must be valued and placed on the tax rolls at fair market value. Despite litigation attacking this conclusion in practically every respect and from every angle it now seems to be firmly established that real property, tangible personal property and intangible personal property is called upon to respond to the levy of taxation at its ascertainable value on January 1 of each year. A recitation of the cases, decisions and language of the opinions is unnecessary to this case. For the purpose of this litigation it needs only to be recognized that this simple truth is the difficult goal and the only method by which to comply with the constitutional mandate of fair and equal taxation.

### Unequal rate of taxation

Real and tangible personal property must stand and endure without limitation whatever rate of taxation is imposed upon it by the county commissioners, the budget commissioners and such other officers as are required by law to levy and collect taxes.

Under the constitutional provision set forth above there has been imposed upon the taxing authorities and the legislature a two mill limitation as the upper limit of taxation upon intangible personal property.

In accordance with this authority the legislature has established a millage rate of one-tenth of one mill on class "A", one mill on class "B", two mills on class "C" and one mill on class "D" of intangible personal property.

## Millage rate of Duval County

According to the allegations of the complaint the millage rate in Duval County for the year 1965 was established at approximately thirty mills.

Parenthetically, it may be noted although not a direct issue in this case, that the court could take judicial notice of the fact that real and tangible personal property within the county which is also located within the city is subjected to additional taxation at the rate of approximately twelve mills whereas there is no municipal levy on intangible personal property. This factor is not being used in determining the action of the court, but in considering the ultimate issue of governmental benefits granted for taxes levied this would perhaps in some cases be material.

## Tax roll of Duval County

According to the allegations of this complaint the grand total of intangible personal property valuations in the county is approximately $3,137,000,000. It is further alleged that the non-exempt real and tangible personal property had a valuation of approximately $1,650,000,000. It therefore appears that taxable real and tangible personal property constituted approximately 34.46% of the taxable wealth of the county and intangible personal property constituted 65.54%. Nevertheless, when the different rates were applied to these valuations real and tangible personal property owners paid approximately 94.21% of the total tax collected and intangible personal property owners paid only 5.79%. This disparity is sufficiently broad to require the court to at least hesitate in saying that as a matter of law such treatment could not possibly violate the constitutional provisions.

In addition to the mathematics of the above comparison it also appears that the owner of real and tangible personal property in Duval County will pay more than 300 times as much tax as the owners of class "A"; more than 30 times that of class "B"; more than 15 times that of class "C"; and more than 30 times that of class "D" intangible personal property.

## Contention of unconstitutionality

It is the contention of the plaintiff that this system of taxation which results in such a wide disparity of taxes between the real and personal property owners on the one hand and intangible personal property on the other, constitutes an arbitrary, unjust, unlawful and unconstitutional scheme of taxation in its operating incidence upon plaintiff's property. This argument is based upon the contention that this violates the plaintiff's constitutional right to equal protection of the law.

## Conclusions

This court is acutely aware of the fact that what it has before it is a classification imposed upon themselves by the citizens of Florida through the adoption of successive constitutional amendments. It is therefore properly reluctant to determine that such action constitutes a deprivation of equal protection of any class since it is the citizens themselves who made this determination. Were this simply a statute creating a preferential classification the court would not long hesitate to declare that such action of the legislature did violate the equal protection clauses of both constitutions. History confirms again and again, however, that it is difficult to protect the people from their own self-abuses.

After long study and due deliberation this court has concluded that this disparity is gross, that it is unfair and that it should perhaps be reviewed by constitutional deliberations but that since the people of the state have spoken through the adoption of these various amendments the court is compelled to take no action inconsistent with its own constitution. It may very well be that this discrimination ultimately will not stand the test of due process and equal protection under the federal constitution. The disparity has been continually widened because of constitutional and legislative enactments according intangibles increased preferential treatment while at the same time real and personal tangible taxes have continued to spiral because they are the only source of local revenue. The variance has reached what may be called another "credibility gap".

It is therefore, upon consideration ordered and adjudged that —

1. Count two of the second amended complaint is dismissed, with prejudice, and without leave to further amend.

2. The defendants, Carl D. Langston, Ellis K. Warren, Joe C. Sessions, Lynwood Roberts and Edward I. Acosta, as and constituting the budget commission of Duval County, are dismissed as parties to this suit.

3. The defendants, Robert Harris, T. K. Stokes, Jr., Lem Merrett, Julian Warren and Fletcher Morgan, as and constituting the board of county commissioners and the board of tax equalization of Duval County, are dismissed as parties to this suit.

4. The remaining defendants are allowed five days within which to file and serve an answer to the first and third counts of the second amended complaint.

5. Any previously filed answers shall stand over to such counts unless such defendants file a new or further answer in accordance with the permission of this order.