UNITED STATES of America, Plaintiff,

v.

STATE OF NEW MEXICO, Bureau of Revenue of the State of New Mexico, and Fred L. O'Cheskey, as Commissioner of Revenue of and for the State of New Mexico and his successors in office, Defendants.

No. 75–418–M Civil.

United States District Court,
D. New Mexico.

Aug. 4, 1978.

Victor R. Ortega, U. S. Atty., Ruth C. Streeter, Asst. U. S. Atty., Albuquerque, N. M., Charles E. Stratton, Trial Atty., Tax Div., U. S. Dept. of Justice, Washington, D. C., for plaintiff.

Daniel H. Friedman, Jan E. Unna, Special Asst. Attys. Gen., Santa Fe, N. M., for Bureau of Revenue, defendants.

## MEMORANDUM OPINION

MECHEM, District Judge.

This matter is before the Court on cross-motions for summary judgment. The par-

ties are in agreement that there is no genuine issue of material fact, and I find that it is proper to grant summary judgment in favor of the plaintiff on the basis of the law and the affidavits, exhibits, depositions and interrogatories on file in this case. The following shall constitute my findings of fact and conclusions of law. Jurisdiction exists over the parties and the subject matter.

In this action the United States is seeking a declaratory judgment that, in light of the Constitution and the laws of the United States and New Mexico:

1. Sales of tangible personal property to Energy Research and Development Administration (ERDA), through its management contractors, Sandia Corporation (Sandia) and the Zia Company (Zia), are sales to the United States which are not subject to the 4% gross receipts tax nor to the compensating tax imposed by the New Mexico Gross Receipts and Compensating Tax Act; and

2. U. S. Government advanced funds used for Government operations under ERDA management contracts with Sandia, Zia and Los Alamos Constructors, Inc. (LACI), are not subject to the 4% gross receipts tax imposed by the New Mexico Gross Receipts and Compensating Tax Act; and

3. The United States has the right to be a party to administrative tax proceedings before the New Mexico Commissioner of Revenue wherein tax liabilities of the contractors or their vendors are at issue.

The State Bureau of Revenue (Bureau) claims that the contractors are subject to these taxes because they are not the agents of the government but are instead independent contractors who are reimbursed for the performance of services under their contracts with ERDA, the costs of which include employee salaries, suppliers', subcontractors' and other costs of engaging in business in New Mexico. The State further claims that the United States has no right to be a party to the administrative tax proceedings because it is not the "taxpayer" under Section 72–13–15(*O*), N.M.S.A. 1975 Supp.

The resolution of the plaintiff's first claim depends upon whether the tangible personal property is sold to the contractors, or to the United States or its agents. A vendor's receipts from sale to the United States or its agents are non-taxable under the New Mexico Gross Receipts and Compensating Tax Act, Sections 72–16A–1 to 72–16A–19, N.M.S.A. 1975 Supp. The United States is claiming to be the party to whom the property is sold through its procurement agents, Sandia and Zia, and seeks to invoke the deduction provision of Section 72–16A–14.9 which provides in part:

> Receipts from selling tangible personal property . . . to the United States or any agency or instrumentality thereof or the State of New Mexico or any political subdivision thereof may be deducted from gross receipts.

The Bureau has refused to authorize the issuance of appropriate nontaxable transaction certificates to these contractors on the basis that they are not the agents or instrumentalities of the United States and therefore any sales of tangible personal property to them are not sales to the United States.

An analysis of the contractual relationship between the United States and the contractors will establish to whom the tangible personal property is sold.

Sandia is a special subsidiary of Western Electric Company, Inc. and operator, since 1949, of the Government-owned Sandia Laboratories; Sandia was created and exists exclusively to perform Government research and development. It receives no fee or profit, owns no property except $1,000 in Government bonds constituting its nominal paid-in capital, and does not perform any private work.

Zia has been performing, since 1946, management, operational, maintenance, architect-engineer, procurement, and related work which facilitates ERDA research and development functions at the Los Alamos Scientific Laboratory. Although Zia owns property and performs separate private work, none of its property is involved in performance of the ERDA contract, and Zia

keeps a distinct set of records which are owned by and maintained for the Government, and relate to the performance of the ERDA contract. In addition, all private work is performed by different employees in separate sections of the company away from Los Alamos.

LACI is devoted exclusively to the performance of construction work in support of the Los Alamos Scientific Laboratory, a wholly-owned government research and development facility. LACI is a separate corporation managed by Zia, and owns no tangible personal property. Zia procures all tangible personal property needed in performance of the LACI–ERDA contract; LACI makes no purchases. Both Sandia and Zia procure property needed for contract performance by issuing purchase orders or purchase contracts to sellers.

Zia and LACI are paid fixed fees annually for work performed under their contracts with ERDA. Gross receipts taxes have been paid each year by Zia and LACI on these fixed fees, as compensation received for services rendered.

The ERDA management contracts involved in this case provide that title to all tangible personal property passes directly to the Government from the vendor; the contractors are not considered "owners" of any tangible personal property procured by them. Some tangible personal property is obtained directly from government sources, title to which is vested in the Government. The contracts also place the risk of loss of property acquired under the contracts upon the Government and provide for Government control over the disposition of the property and approval of property management procedures employed by each contractor.

The tangible personal property procured by the contractors and all other operational costs such as salaries, are paid for by the use of an "advanced funding" arrangement whereby funds are deposited into government bank accounts by way of letters of credit, and payments are made from these government funds by the issuance of drafts drawn by the contractors on the accounts.

The Bureau claims that these funds are paid to the contractors as reimbursement for their own costs, and as compensation for services rendered. A review of the funding arrangements, agreements with the banks which provide for Government ownership of the funds in the accounts and control over the disposition thereof, and the liability provisions in the contracts which recognize the Government's obligation to pay all operational costs, indicates that no contractor funds are used to pay for contract costs. Instead, the contractors are empowered to pledge the credit of the Government. Obligations that are "properly incurred" by the contractors (that is, without willful misconduct or bad faith on the part of the contractors) are considered to be ERDA liabilities. If the Government failed to provide funding, the contractors would be excused from performance of the contracts, and the Government would be liable for all properly incurred and reported claims. The advanced funding scheme is not a system by which the contractors are reimbursed for their direct costs under the contract.

The contractual relationship of the contractors and the Government in this case is not the same as the typical cost-plus-fixed-fee contractor, such as the one in *Alabama v. King & Boozer,* 314 U.S. 1, 62 S.Ct. 43, 86 L.Ed. 3 (1949), who was obligated to pay its costs from its own funds, and was directly liable to obligees and was subsequently reimbursed by the Government. The facts in *King & Boozer, supra,* make it clear that no agency relationship existed.

Recognizing the constitutional prohibition against state taxation of the United States, *McCulloch v. Maryland,* 4 Wheat. 316, 4 L.Ed. 579, the Supreme Court in *Kern-Limerick, Inc. v. Scurlock,* 347 U.S. 110, 74 S.Ct. 403, 98 L.Ed. 546 (1954), held that a Government contractor may be exempt from or immune to taxes if the contractor is the agent of the United States. The same rationale is behind the New Mexico tax here in question, which exempts a vendor from paying gross receipts taxes on tangible personal property sold to the United States or its agents or instrumentalities. The con-

tract in *Kern-Limerick* specifically named the contractor as the purchasing agent of the Government, and provided that the Government was directly liable to the vendors for obligations incurred by the contractor. For these reasons, the contractor was found to be the procurement agent of the United States and was thus exempt from the state taxes.

In determining whether the contractors in this case are the procurement agents of the Government, the surrounding facts and contract provisions must be analyzed. However, specific words naming the contractors as agents are not required, so long as it is clear from the contracts and factual circumstances that the relationship is one of agency. *United States v. Livingston,* 179 F.Supp. 9 (E.D.S.C.1959), aff'd per curiam, 364 U.S. 281, 80 S.Ct. 1611, 4 L.Ed.2d 1719 (1960); *United States v. Boyd,* 211 Tenn. 139, 363 S.W.2d 193 (1962).

Prior to July 1, 1977, the three contracts in this case did not use the word "agent" to define the relationship between the contractors and the Government, yet the method of operation and obligations set forth in those contracts would imply an agency relationship. The contracts were modified on July 1, 1977, during the course of this litigation; one of the reasons for this modification was to expressly recognize the "long standing agency status and authority" of the contractors "for certain purposes". Modification No. 30, Contract AT (29–1)–789, Supplemental Agreement. The Bureau recognized this agency relationship for a period of about twenty years before these modifications were made, during which time no taxes were claimed to be due on the advanced funds of the government as "gross receipts" of the contractors, nor on the revenue from sales of tangible personal property to these contractors. In 1967 the Bureau's position regarding the agency relationship of the contractors and the government changed, and this litigation ensued. The Bureau asserts that a federal agency may not legally modify a contract for the purpose of immunizing an otherwise-taxable entity from state taxes without Con-

gressional authorization. This argument is disposed of by the conclusion that the Government and the contractors herein maintained an agency relationship for procurement purposes during the years of operation prior to the contract modifications, and have continued to do so to the present. They were not taxable before the modifications, because such modifications merely made the relationship more express, but did not change the agency relationship which had been in operation for three decades, and which had been recognized as such by the Bureau.

The Bureau argues that the purchase orders do not identify the contractors as the Government's agents, but instead, refer to them as "Buyers", and that the contractors are responsible for determining their needs, selecting buyers, negotiating price, and generally enjoying a great degree of responsibility and autonomy not normal to an agency relationship.

Just as the fact that title to tangible personal property passes directly from the vendor to the Government is insufficient in itself to establish an agency relationship, *Alabama v. King & Boozer, supra,* so too are the Bureau's arguments as set forth above insufficient to show the lack of such. *U. S. v. Bureau of Revenue,* 87 N.M. 164, 531 P.2d 212 (1975) (Hernandez, B.C. concurring). More important are the facts that these are management contracts, in existence for nearly thirty years, (not short term buyer-seller contracts) conducted in government-owned facilities, with government-owned funds, for the purpose of carrying out significant ERDA statutory responsibilities. The Government maintains control over the contractors' procurement systems, property management and disposal practices, method of payment of operational costs, and other operations under the contracts. In addition, the Government has the right of prior approval of all purchases above a certain amount as stated in the contracts. For these reasons and those discussed above, I conclude that Sandia and Zia are procurement agents of the United States and that any sales of tangible

personal property to them are sales to the United States through its procurement agents, which are not subject to the 4% gross receipts tax imposed by the New Mexico Gross Receipts and Compensating Tax Act.

This determination is also dispositive of the question whether Sandia and Zia are liable for the compensating tax imposed on their purchases of tangible personal property in other states and brought into New Mexico for purposes of performing their contracts with ERDA. The New Mexico Court of Appeals recently held that "the legislature intended to make our gross receipts tax and our compensating tax correlate: an exemption from the gross receipts tax must also be treated as an exemption from the compensating tax." *Western Electric Company v. New Mexico Bureau of Revenue,* 90 N.M. 164, 167, 561 P.2d 26, 29 (1976).

Although the state court's interpretation of its own taxing statute is not binding upon this court due to the federal question of Government immunity from state taxes, *First Agricultural National Bank v. Tax Commission,* 392 U.S. 339, 347, 88 S.Ct. 2173, 20 L.Ed.2d 1138 (1968), it is entitled to great weight and is conclusive if it is a reasonable interpretation in light of the operation of the statute. *American Oil Co. v. Neill,* 380 U.S. 451, 455–56, 85 S.Ct. 1130, 14 L.Ed.2d 1 (1965). There is nothing to indicate that the New Mexico court's interpretation noted above is anything but reasonable, especially in light of the purpose of the compensating tax, which is:

> . . . to protect New Mexico businessmen from the unfair competition that would otherwise result from the importation into the state of property without payment of a similar tax [as the gross receipts tax]. Section 72–16A–2 N.M. S.A. 1975 Supp.

Thus, the contractors are entitled to the deduction provision of the New Mexico Gross Receipts and Compensating Tax Act for purchases of tangible personal property both inside and outside New Mexico.

With regard to the Government's second claim, that the advanced funds are non-taxable under the New Mexico Gross Receipts Act, the language of the statute requires an analysis of whether these funds were "received" by the contractors, as compensation for services:

> 'gross receipts' means the total amount of money or the value of other consideration, received . . . from performing services in New Mexico . . . Section 72–16A–3(F) N.M.S.A. 1975 Supp.

The Bureau contends that the advanced funds are received by the contractor as payment for services not simply disbursed by the contractor as an agent to cover the costs of operations under the contracts.

The funds deposited in the special bank accounts by ERDA are the only monies available for payment of all of the contractors' operational costs. They are not to be disbursed in any manner not consistent with contract performance; ERDA may exert direct control over the disbursement of the funds, and retains title thereto while they are on deposit with the bank. Zia and LACI receive a fixed fee as compensation for their services, upon which they pay gross receipts taxes; Sandia receives no fixed fee or profit. The Zia and LACI contracts prior to modification stated that "payment for allowable costs and of the fixed fee . . . shall constitute complete compensation for the contractor's services." Effective April 1, 1976, this language was modified as follows:

> As compensation for performance of work under this contract, the contractor shall be paid a fixed fee as hereinafter provided. Modification 66 to Zia contract, p. 12, and Modification 56 to LACI contract, p. 12.

Judge Hernandez, in his special concurrence in *U. S. v. Bureau of Revenue, supra,* 87 N.M. at p. 168, 531 P.2d at p. 216, considered the language in the unmodified version of Zia and LACI's contract quoted above and found that it was meant "as merely a limitation upon the government's liability under the contract". Judge Hernandez held at p. 168, 531 P.2d at p. 216

that to construe it otherwise, in light of the contract as a whole, would be to unreasonably isolate certain words, and to strain their meaning "beyond ordinary or common usage". No other reasonable interpretation of this language is possible: the contract modifications simply clarify the intention of the parties and add support to the conclusion that the advanced funds are not meant to be compensation to the contractors.

■ Having found that these contractors are procurement agents of the United States, it follows that the funds which they use for operations are not received by them for services, but are funds which belong to the Government until they are used to pay operational costs. Therefore, the advanced funds are not "gross receipts" to the contractors, and they are not subject to the 4% gross receipts tax imposed by the New Mexico Gross Receipts and Compensating Tax Act.

With regard to the Government's third claim, it is clear from the foregoing that the United States is the real party in interest and should be recognized as a party in any New Mexico administrative tax proceeding involving the three contractors involved herein or their vendors. The contracts here require the United States to pay all costs under the contracts including taxes. In *U. S. v. Bureau of Revenue, supra,* the New Mexico Court of Appeals held that this was sufficient to recognize the United States as a taxpayer under the statute and allow it to be a party in tax disputes with the Bureau. Similarly, federal cases have established that, in cases involving a challenge to state taxes as violating the Government's sovereign and constitutional rights, the United States must be permitted to participate as a party. *U. S. v. Bureau of Revenue,* 291 F.2d 677 (10th Cir. 1961); *Marquardt Corporation v. Weber County,* 360 F.2d 168 (10th Cir. 1966), expressly overruling *U. S. v. Bureau of Revenue,* 217 F.Supp. 849 (D.C.N.M.1963) which held to the contrary.

■ Under the circumstances of this case, the United States is the "taxpayer" under Section 72–13–15($O$), N.M.S.A. 1975 Supp. and must be given the opportunity to participate as a party in any administrative proceedings before the New Mexico Commissioner of Revenue involving the tax liabilities of Zia, Sandia, LACI or their vendors.

A declaratory judgment will be entered consistent with this opinion.