**STATE of Alaska, DEPARTMENT OF REVENUE, Appellant,**

v.

**SEARS, ROEBUCK AND COMPANY, Appellee.**

**No. 6277.**

Supreme Court of Alaska.

March 4, 1983.

David T. LeBlond, Asst. Atty. Gen., Anchorage, and Wilson L. Condon, Atty. Gen., Juneau, for appellant.

John T. Piper, Michael W. Dundy, James H. Lowe, Bogle & Gates, Anchorage, for appellee.

Before BURKE, C.J., RABINOWITZ, and MATTHEWS, JJ., and DIMOND,* Senior Justice.

OPINION

RABINOWITZ, Justice.

This case involves a tax dispute between Sears, Roebuck and Co. and the State De-

---

* Dimond, Senior Justice, sitting by assignment made pursuant to article IV, section 16 of the Constitution of Alaska.

partment of Revenue (DOR). The Alaska Business License Act, AS 43.70.010–.030, requires persons engaged in business in the state to obtain a license and pay a license tax as provided in AS 43.70.030, in return "for the privilege of engaging in a business in the state." AS 43.70.020(a).[1] Until 1978, the tax was assessed against annual gross receipts of the business. AS 43.70.030(a) (amended 1978).[2]

In 1976 and 1977, Sears paid the gross receipts tax on three types of sales: (1) direct retail sales in Alaska (2) catalog sales processed through Sears outlets in Alaska, and (3) mail order sales sent directly to Alaska customers from the Sears Catalog Merchandise Distribution Center in Seattle, with no assistance from the Alaska outlets. Sales of types (1) and (2) above were reported as taxable by Sears, and are not in dispute in this case.[3] With respect to type (3), Sears paid the tax on direct mail order

sales under protest, maintaining that the state had no power to assess the tax against these sales.

A hearing of Sears' claim was held in 1980, and the DOR concluded that the tax was "reasonably related" to benefits derived by Sears within Alaska. On appeal, the superior court reversed the DOR decision on the ground that Alaska lacked the constitutionally required "nexus" to tax the proceeds of Sears' direct mail order sales. We reverse.

Sears relies principally upon the case of *Norton Co. v. Department of Revenue of the State of Illinois,* 340 U.S. 534, 71 S.Ct. 377, 95 L.Ed. 517 (1951).[4] In *Norton,* Illinois had imposed an occupation tax " 'upon persons engaged in the business of selling tangible personal property at retail' " within the state.[5] 340 U.S. at 535, 71 S.Ct. at 379, 95 L.Ed. at 519. The base of computation was gross receipts of all sales to Illinois

1. AS 43.70.020(a) provides:

   *Application for license.* (a) For the privilege of engaging in a business in the state, a person shall first apply, upon forms prescribed by the commissioner, and obtain a license, and pay the license fee provided for in AS 43.70.030. A license issued to a firm for a particular line of business covers all its operations in the state in the line of business regardless of the number of its establishments. A license issued under this subsection shall include
   (1) the name and address of the licensee;
   (2) the line of business to be conducted; and
   (3) the year for which the license is issued.

2. AS 43.70.030(a) provided, in pertinent part:

   *Levy and computation of license fee.* (a) The license fee for each business is $25 plus a sum equal to one-half of one percent of the gross receipts in excess of $20,000 from the business during the year for which the license is issued, except that all gross volume in excess of $100,000 a year is taxed at the rate of one-quarter of one percent.
   In 1978, AS 43.70.030 was amended to delete the gross receipts portion of the fee. Act of July 8, 1978, ch. 144, § 3, SLA 1978. Only a $25 fee is now required for a license.

3. The DOR hearing examiner found that:

   In all cases where the Alaska customer placed the original order with a Sears facility in Alaska or delivery of merchandise was through or by a Sears facility in Alaska, such sales have been included in the business

license measure and tax paid to the State of Alaska in its original return.

4. Although the parties in their briefs devote considerable attention to the question of whether *Norton* has been discredited in the thirty years since its decision, we find no basis to conclude that it has been overruled, and we regard it as precedent binding on this court. The state conceded as much in its brief before the superior court:

   *General Motors Corp.* and *Standard Pressed Steel* finessed around *Norton Co.* . . . [T]he Court did not overrule *Norton Co.* . . . the Court ingeniously distinguished *Norton Co.,* preserving but not elucidating its "governing principle" . . .
   The state does not place exclusive reliance upon its position that *Norton* has gone by the boards. It argues in the alternative that Sears has failed to meet its burden of demonstrating dissociation as required by *Norton.*

5. The DOR hearing examiner found that *Norton* was inapplicable, concluding that *Norton* was a "sales tax" case, whereas in the present case the tax incidence is upon "all activities of the taxpayer," and not merely sales. We think that the hearing examiner mischaracterized the Illinois tax at issue in *Norton,* and the parties do not argue that *Norton* is distinguishable on those grounds. We will assume for the purposes of this decision that the function of the occupation tax in *Norton* was essentially the same as the business license tax under consideration in this case.

residents. Norton Company (Norton), a Massachusetts corporation, had one outlet and warehouse in Chicago. The Chicago outlet handled direct sales and processed some orders going back to the Massachusetts headquarters. · Illinois assessed its tax based upon all of Norton's sales, including direct mail orders. 340 U.S. at 535–36, 71 S.Ct. at 379, 95 L.Ed. at 519–20. Norton argued that the state had exceeded its taxing power by taxing all of the company's Illinois-derived income. The Supreme Court agreed with respect to Norton's direct mail order business and held that this was "so clearly interstate in character that the State could not reasonably attribute its proceeds to the local business . . . ." 340 U.S. at 539, 71 S.Ct. at 381, 95 L.Ed. at 521.

The Supreme Court's reasoning proceeded from the premise that a foreign company entering a state only for the purpose of advertising or soliciting direct orders remained beyond the reach of the state's taxing power. 340 U.S. at 537, 71 S.Ct. at 380, 95 L.Ed. at 520. The question presented in *Norton* was whether a business might retain its tax immunity for direct order sales even after it established a branch office or outlet within the state. Under limited circumstances, the Supreme Court held, the

taxpayer could demonstrate that a particular class of transactions was dissociated from the taxpayer's local business, and retained a purely interstate character. The burden of establishing dissociation, however, was on the taxpayer.[6] 340 U.S. at 537, 71 S.Ct. at 380, 95 L.Ed. at 520–21. The Supreme Court has more recently held that the burden imposed by *Norton* is a heavy one, and that the inference of nexus for in-state sales is strong when a foreign corporation maintains a local presence. *American Oil Co. v. Neill,* 380 U.S. 451, 458, 85 S.Ct. 1130, 1134, 14 L.Ed.2d 1, 6 (1965).[7]

We think that this case is factually distinguishable from *Norton,* and that Sears has failed to meet its burden of showing that its direct mail order sales are dissociated from its in Alaska operations.[8] In *Norton,* the taxpayer had established only one branch office in Illinois, and there was no contention that the office played a significant role in generating direct mail order sales. In this case, Sears maintained retail sales establishments providing over the counter and catalog sales in Anchorage, Fairbanks, Haines, Homer, Juneau, Kenai, Ketchikan, Kodiak, Petersburg, Sitka, Soldotna, Wasilla, and Wrangell, Alaska.[9] These local out-

---

**6.** The Supreme Court has said that a principal danger of state gross receipts taxes is that they might result in multiple taxation of a single transaction. *Standard Steel Co. v. Washington Revenue Dept.,* 419 U.S. 560, 563, 95 S.Ct. 706, 709, 42 L.Ed.2d 719, 723 (1975). The Supreme Court has indicated that one practical way in which a taxpayer may demonstrate dissociation from the taxing state is to show that the risk of duplicative taxation exists. The burden of making such a showing, however, is borne by the taxpayer. *Standard Steel Corp., supra,* 419 U.S. at 563, 95 S.Ct. at 709, 42 L.Ed.2d at 723; *General Motors Corp. v. Washington,* 377 U.S. 436, 449, 84 S.Ct. 1564, 1572, 12 L.Ed.2d 430, 439–40 (1964). *See also J.C. Penney Co., Inc. v. Hardesty,* 264 S.E.2d 604, 610 (W.Va. 1979). Sears has raised no claim of multiple taxation in this case.

**7.** There Chief Justice Warren writing for the Court stated in part:
Granted that when a corporation, pursuant to permission given, enters a State and proceeds to do local business the "link" is strong. In such instances there is a strong inference that it exists between the State and transactions which result in economic bene-

fits obtained from a source within the State's territorial limits. The corporation can, however, exempt itself by a clear showing that there are no in-state activities connected with out-of-state sales. In such instances, the transactions are said to be "dissociated from the local business," *Norton Co. v. Department of Revenue,* supra, 340 U.S. at 537 [71 S.Ct. at 380], 95 L.Ed. at 521, and therefore may not, consistent with due process, be taxed.
*American Oil Co. v. Neill,* 380 U.S. 451, 458, 85 S.Ct. 1130, 1134, 14 L.Ed.2d 1, 6 (1965).

**8.** The *Norton* Court stated that the administrative and judicial separation of taxable from nontaxable transactions must be made "in the light of all the evidence." 340 U.S. at 538, 71 S.Ct. at 380, 95 L.Ed. at 521. It further stated that it would not re-examine state court findings of fact with respect to dissociation where those findings were supported by substantial evidence. *Id.*

**9.** Sears had a total of fifteen outlets in Alaska in 1977.
At the administrative hearing held in this matter, witnesses for Sears admitted that Alas-

lets provided Alaska patrons with customer service on catalog items, such as returns for repair, credit, or exchange. In addition, they supplied application forms and accepted direct applications for Sears credit card accounts. The majority of direct mail order sales are on credit, and direct mail customers were able to make payments on their accounts at any Alaska outlet.[10]

Under these circumstances, we think that Sears cannot rely on an asserted similarity to the *Norton* fact pattern to satisfy the requirement that it demonstrate dissociation.[11] On the contrary, we think that the facts suggest that Sears has a substantial commercial presence in Alaska, and that

this presence has a significant nexus to Sears' direct mail order business.[12]

In considering a question very similar to that posed in the case at bar, the Supreme Court of West Virginia recently ruled that J.C. Penney's fifteen in-state outlets created a sufficient nexus with the state to support a gross receipts tax on all sales to West Virginia residents, including direct mail order sales. *J.C. Penney Co., Inc. v. Hardesty,* 264 S.E.2d 604 (W.Va.1979). The court held that:

> Like the manufacturer in [*Standard Pressed Steel Co. v. State of Washington,* 419 U.S. 560, 95 S.Ct. 706, 42 L.Ed.2d 719

ka residents could go into a catalog store, get a catalog, take it home, fill out the order blank and send it in, and that if they had a problem making out their orders they could go to a catalog store and obtain help from a Sears' employee. They acknowledged that if there was a problem with the merchandise which had been directly ordered, the person who filed the direct order could take the merchandise to a catalog store.

One witness for Sears stated that Sears was unable to quantify the number of direct order customers who took advantage of the presence of catalog stores in Alaska in returning items of merchandise to these outlets. On the other hand, this witness stated that the ususal practice for Sears rural direct mail customers in Alaska was to take the merchandise to the local post office.

**10.** In its statement of facts submitted to the DOR hearing examiner, Sears described its retail installment credit account operations in Alaska as "a sales tool designed to enhance total sales."

**11.** In its brief, Sears suggests that the only issue before this court is whether we will follow *Norton,* or disregard it. It argues that the *Norton* decision is *"squarely on point"* with the instant facts." We think that the principles of *Norton* must be applied in light of the facts and circumstances of each case. *See supra* note 6.

**12.** In *Nelson v. Sears, Roebuck & Co.,* 312 U.S. 359, 61 S.Ct. 586, 85 L.Ed. 888 (1941), the Supreme Court ruled that Iowa could constitutionally presume that Sears' direct mail order sales to Iowa residents were related to Sears' other instate business, and sustained the Iowa use tax imposed on all sales to Iowa residents, including mail orders. The Court found that the state could permissibly include the direct mail order sales into its calculation of the global benefits received by Sears due to the privilege of conducting business in Iowa. 312 U.S.

at 364, 61 S.Ct. at 588, 85 L.Ed. at 892. *See also Nelson v. Montgomery Ward & Co.,* 312 U.S. 373, 375, 61 S.Ct. 593, 594, 85 L.Ed.2d 897, 899 (1941) (a company cannot escape the duty to pay state tax for privilege of doing business in the state merely because out-of-state employees conducted the sale). *Nelson v. Sears,* involved a tax assessed against the users of Sears' products rather than against Sears itself, which is a distinction of some import in federal law. *See National Geographic v. California Equalization Bd.,* 430 U.S. 551, 560, 97 S.Ct. 1386, 1392, 51 L.Ed.2d 631, 640 (1977). In *Nelson v. Sears,* the Court characterized the question before it as whether the *duty to collect* the use tax could be imposed on the foreign business, 312 U.S. at 364, 61 S.Ct. at 588, 85 L.Ed. at 892. The Court has observed that, since the incidence of use and sales taxes is local, "relatedness" is more easily established here than in regard to taxes on gross receipts. *See Norton,* 340 U.S. at 537, 71 S.Ct. at 380, 95 L.Ed. at 520. Even so, we do not view the ostensible difference in the geographical incidence of sales and gross receipts taxes as the sole ground of distinction between *Norton* and *Nelson v. Sears.* Relation and dissociation are opposing points along a continuum of possibilities, and the proper categorization of each case depends upon its facts. We think that the *Nelson v. Sears* Court found substantial relatedness between Sears' in-state operations in Iowa and its direct mail order sales, perhaps great enough to survive a dissociation challenge within the *Norton* framework. Certainly the Supreme Court found *some* degree of relatedness in *Nelson v. Sears,* and this is more than it was willing to do under the *Norton* facts. *See Norton,* 340 U.S. at 539, 71 S.Ct. at 381, 95 L.Ed. at 521. *See also American Oil Co. v. Neill,* 380 U.S. 451, 458–59, 85 S.Ct. 1130, 1134–35, 14 L.Ed.2d 1, 6–7 (1965) (record failed to indicate that in-state presence contributed *in any way* to out-of-state sale).

(1975)], the activities of the taxpayer are greatly facilitated by its overall operations in West Virginia; there are sufficient contacts with the State to support a tax nexus . . . .

*Id.* at 610. Justice Miller, in a concurring opinion, observed that "to contend that out-of-State catalog sales have no local connection is to ignore business reality." *Id.* at 617. In *J.C. Penney,* the local retail outlets accepted returns of mail order purchases and performed repairs on broken or defective mail order merchandise. The West Virginia stores advertised in the local media,[13] provided customers with catalogs, and acted as a showcase for products available by direct mail. *Id.*

We find it to have been within the state's power to tax Sears' gross receipts for the years of 1976 and 1977, including direct mail order sales. The judgment of the superior court granting Sears a refund, costs and attorney's fees is REVERSED.

---

13. At oral argument before the superior court, the state conceded that the record did not establish in-state advertising for catalog sales.