323 So.2d 810 (1975)
SCHWEGMANN BROS. GIANT SUPER MARKETS and Dairy Fresh Corporation
v.
Edwin EDWARDS, Individually and in his official capacity as Governor of the State of Louisiana, et al.
No. 7314.
Court of Appeal of Louisiana, Fourth Circuit.
December 9, 1975.
Rehearings Denied January 13, 1976.
Writs Refused February 20, 1976.
*811 Stone, Pigman, Walther, Wittmann & Hutchinson, Michael R. Fontham, Paul O. H. Pigman, David Stone, Saul Stone, New Orleans, for plaintiffs-appellees and Delight Distributing & Sales Co., Inc., intervenor-appellee.
William J. Guste, Jr., Atty. Gen., Donald Ensenat, Staff Atty., New Orleans, for defendants-appellees.
Richard F. Knight, R. Bradley Lewis, Talley, Anthony, Hughes & Knight, Bogalusa, for Gulf Dairy Ass'n, Inc., intervenor-appellant.
Bryan E. Bush, Jr., Baton Rouge, for Baton Rouge Area Milk Producers Ass'n, Inc., North La. Pure Milk Producers' Ass'n, Inc., Central West and Southwest Dairy Farmers Ass'n, Inc., intervenors-appellees.
*812 James P. Screen, Gen. Counsel, New Orleans, for La. Health and Human Resources Administration, defendant-appellant.
Before LEMMON, BOUTALL and BEER, JJ.
BOUTALL, Judge.
This is an appeal from the granting of a writ of mandamus in the trial court. The lower court ordered defendants, John M. Bruce and Raleigh Richard of the Louisiana Health and Human Resources Administration to issue a permit to Dairy Fresh Corporation authorizing it to import milk and milk products from its plant in Hattiesburg, Mississippi, provided those products met the specifications of the Louisiana Sanitary Code. Defendants have appealed and we affirm.
This case arises from the denial of a permit application made by Dairy Fresh Corporation. Dairy Fresh made application to import processed milk into Louisiana under the provisions of L.R.S. 40:923 and Chapter V of the Sanitary Code, State of Louisiana. The pertinent part of that Chapter is section 5.B.4.
"5.B.4 IMPORTED MILK AND MILK PRODUCTS. (1) It shall be unlawful for any person, firm, or corporation to ship milk or milk products (except Extra and Standard grades of dry-milk and dry-milk products) into Louisiana from without the state without first obtaining a permit from the State Health Officer. (2) All milk and milk products (except Extra and Standard grades of dry-milk and dry-milk products) brought into Louisiana from without the State shall be of Grade A quality. The production sources may be inspected by a duly authorized representative of the State Health Officer, or in lieu thereof, the State Health Officer may accept the certificate of inspection of a duly authorized governmental representative, agent or agency of such other state wherein such products are produced. (3) All dry-milk and dry-milk products brought into Louisiana from without the state shall meet minimum requirements for at least one of the following grade designations and shall be labeled accordingly: (a) Grade A, as defined in Section 5.K.-15 of this code; (b) Extra, as defined in Section 5.K.16 of this code; (c) Standard, as defined in Section 5.K.17 of this code. Production sources and processing plants may be inspected by a duly authorized representative of the State Health Officer, or in lieu thereof, the State Health Officer may accept the certificate of inspection of a duly authorized governmental representative, agent or agency of such other state wherein such products are produced."
This section allows only Grade A products to be imported and outlines a method for inspecting production sources. Dairy Fresh contends that its products are of Grade A quality and meet the Louisiana standards for Grade A quality, thus qualifying it for a permit.
On appeal, defendants raise four specifications of error by the trial court. We shall take each in turn.
First, defendants complain that the trial court erred in ordering the issuance of the permit when at the time Dairy Fresh applied it was not in compliance with Louisiana standards. Defendants make this argument as an afterthought. The record is quite clear that Dairy Fresh's application was denied solely on the basis of the difference between Mississippi Grade A milk standards and Louisiana standards. At no time did Louisiana Health officials attempt to see if Dairy Fresh was in compliance and in fact refused an offer of proof of such compliance prior to trial. At the trial Dairy Fresh introduced a document, certified by Mississippi State Health officials, showing that it did comply. Defendants now hinge their attack on this document. This document shows temperature reports, bacteria counts and Wisconsin Mastisis test *813 results on the raw milk produced by Dairy Fresh's suppliers. We have viewed this document and while we are not experts it does appear to show one or two producers out of compliance with bacteria counts and several more out of compliance with the Wisconsin Mastisis test or W. M. T.[1]
We perceive no defect in the report great enough to deny Dairy Fresh an application. Section 5.B.4 requires that imported milk be of Grade A quality. Nowhere in the Grade A requirements is there mention of the Wisconsin Mastisis test and therefore this is not a proper basis for denying the application. Mr. Richard did testify that his office sent out a letter in 1967 stating that the W. M. T. would be enforced at a level not to exceed 22 (Mississippi requires that Grade A milk have a W. M. T. result of 25 or less), however, he admitted that this forms no part of the Grade A milk requirements. As to the producer or producers with high bacteria counts, Mr. Burt, president of Dairy Fresh, testified that this producer had been dropped before application was made for the permit. Even assuming that one or two Dairy Fresh suppliers were out of compliance with Louisiana standards at the time of application this would not give rise to the denial of the permit without a proper check. As the trial judge correctly noted, an application such as Dairy Fresh's is best viewed as a continuing application. Dairy Fresh at the trial proved satisfactorily that it was in compliance with Louisiana standards and could comply with Louisiana requirements for its own producers if issued a permit.
The second allegation of error is really the crux of the dispute. The state officials contend that they are helpless to determine if Dairy Fresh is meeting the Grade A raw milk requirements. All parties agree that adequate protection is afforded the people of Louisiana as far as inspection of the imported processed milk.
Defendants argue that the difference in the Louisiana and Mississippi raw milk and co-mingled milk requirements make it impossible to permit importation of the foreign processed milk[2]. The reasoning of defendants is that it is impossible for Louisiana agencies or agents to make proper checks on the raw milk suppliers of Dairy Fresh. While they admit they could rely on the results of testing by Mississippi governmental inspectors, there is no procedure for them to discover who the suppliers of Dairy Fresh are, short of accepting Dairy Fresh's word as to who its suppliers are.
Defendants' argument on this point is misleading. Defendants assert that the only way to insure proper milk quality involving foreign milk is to use the same procedures for inspection and enforcement as are used in Louisiana. A summary of these procedures are as follows:
Milk is produced by the dairy farmer and immediately cooled and put into a tank. A tank truck arrives and loads the milk, taking a sample of that particular farm's milk before it is comingled with others farms' milk. This tank truck delivers its milk to the processor. Louisiana officials run tests on the raw milk samples to insure compliance with the Sanitary *814 Code. They also inspect the farm and processing plant for cleanliness and proper equipment and procedures. The finished product is also tested for compliance. The tank truck drivers are licensed by the state and must keep lists of the farms they service. The books of each processor are audited to check the suppliers and insure that the tank truck driver and processor are not using milk from degraded dairies.[3] All these procedures are basically used in Mississippi.
Defendants contend that while they could use the Mississippi test results to check on compliance, they have no way to tell who Dairy Fresh's suppliers are because the Mississippi tank truck drivers are not licensed in Louisiana and because they can't audit the Mississippi processors' books. Basically, their argument gets down to the complaint that Louisiana officials have no authority in Mississippi and would be forced to accept Dairy Fresh's voluntary compliance with Louisiana standards.
While it is true that Louisiana officials would have no direct authority in Mississippi to enforce Mississippi laws and regulations, the statute grants authority for Louisiana inspection of milk proposed to be sold in Louisiana and provides authority to refuse importation of non-complying milk and to revoke the permit to import milk. We find nothing in the statute which prevents Louisiana from imposing upon those who wish to furnish milk to Louisiana the same regulations as are imposed on Louisiana producers. The real basis of defendant's contention is not lack of authority to inspect and enforce, but lack of a plan to inspect and enforce or perhaps the manpower to inspect and enforce. The defendants cannot defeat the permissible importation of milk under the statute simply by refusing to implement its provisions to ensure compliance with Louisiana standards. Such a scheme would amount to an arbitrary application of the law and hence an unreasonable interference with interstate commerce.
We have no wish to usurp the authority granted under the Statute, but we must observe that Louisiana Health officials could simply use the Sanitary Code provisions on record keeping, etc., and apply it to Dairy Fresh. See Sanitary Code State of La., Chapter V, section 5.B.5 and 5.B.6. They may themselves inspect or use Mississippi inspection. These conditions will, it seems to us, cure any necessity of reliance on voluntary compliance. The power behind these conditions is, for example, if Louisiana Health officials discover that Dairy Fresh has been using milk from a farmer who has fallen out of compliance with Louisiana's standards then Dairy Fresh's milk can be refused importation into the state until Dairy Fresh and its suppliers meet Louisiana standards. The clout behind section 5.B.4 is revocation of the permit. LSA-R.S. 40:924. It is quite obvious that Dairy Fresh wishes to comply with all conditions for a permit to import milk. Although section 5.B.4 sets up no specific conditions, Louisiana can require Dairy Fresh to comply with auditing procedures or any other reasonable criteria the state wishes to utilize to enforce its inspection rights.
Defendants third argument is that a writ of mandamus was an improper remedy since the act of issuing the permit was a discretionary duty and not a ministerial duty. It is generally true that purely discretionary matters are not proper cases for mandamus, whereas, ministerial duties are. C.C.P. articles 3862 and 3863; Summerall v. Phillips, 258 La. 587, 247 So. 2d 542 (S.Ct.1971); Bye v. Giarrusso, 292 So.2d 742 (La.App. 4th Cir. 1974). The question then becomes was Dairy Fresh entitled to the permit under the statutory provisions or was the granting of the permit within the discretion of the State *815 health officials. LSA-R.S. 40:923 and Sanitary Code, Chapter II, section 5.B.4 make it clear that the act of granting the permit is not discretionary. If it were, we feel the statute itself could be interpreted as an unconstitutional barrier to the free flow of interstate commerce. The only requirement is that the product be Grade A quality as defined by Louisiana law. Mr. Richard and Dr. Bruce of the Louisiana Division of Health both testified that no attempt was made to discover if Dairy Fresh's product was of Grade A quality prior to denying the application. Section 5.B.4 makes it clear that the health officials can inspect the out of state production sources or accept certificates from that foreign state, but, they cannot simply refuse to issue a permit to import. An official may decline issuance of a permit only for a reason specifically authorized by law or the applicable statute. Hargett v. Village of South Mansfield, 271 So.2d 378 (La.App. 2nd Cir. 1972; Vice v. Assumption Parish Police Jury, 135 So.2d 108 (La.App. 1st Cir. 1961). These facts certainly make mandamus proper.
The final argument of defendants, mainly the intervening Dairy Associations, is that if Mississippi milk is allowed into Louisiana, Louisiana processors who must comply with more stringent standards would be denied equal protection of the laws. The basis of the argument is that Louisiana's more stringent requirements increase the price of milk, but Mississippi can produce it for less since they have less stringent requirements. What this argument overlooks is that only milk meeting Louisiana's standards can be imported and therefore the "laws" apply equally to all.
This argument has particular fascination since we are seriously told that this statute and the case before us have nothing to do with milk pricing. The record is abundantly clear that Louisiana changed its milk requirements in 1972 at the insistence of the dairy industry. Prior to 1972 Louisiana had the same requirements as Mississippi and at least 45 other states. Plaintiffs argue to us that the reason for this change was to keep out foreign milk. In view of the fact that the present case arises under the provisions of the Sanitary Code, in the absence of a showing to the contrary, the present law on its face appears to be an expression of the legislative desire to protect and insure the public health by providing more sanitary and wholesome milk. Nevertheless, whatever the purpose was, the fact that foreign milk can now be imported does not deny anyone equal protection of the laws. The statute requires that all comply with the Louisiana standards imposed for the benefit of milk consumers.
For the foregoing reasons the judgment of the trial court is affirmed. Defendants-intervenors to pay all costs.
Affirmed.
NOTES
[1] The Wisconsin Mastisis test or W.M.T. is an examination of raw milk for white blood cells. An abundance of white blood cells usually indicates that the cow giving the milk has some sort of infection in its body.
[2] Louisiana requires all raw milk to be cooled and transported at a temperature of 45 degrees. Mississippi requires 50 degrees. Louisiana requires raw milk from a single producer to have no more than 50,000 bacteria count. Mississippi sets the limit at 100,000. Co-mingled milk (milk from several producers stored in a common tank) can have no more than 150,000 bacteria count in Louisiana. Mississippi sets the limit at 200,000.

We further note that both Louisiana and Mississippi require that Grade A processed milk be made only from Grade A raw milk.
[3] A degraded dairy is one that has fallen out of compliance with the Grade A raw milk requirements on 3 of the last 5 samples taken.