**LOUISIANA DAIRY STABILIZATION BOARD**

v.

**DAIRY FRESH CORPORATION and Dairy Fresh Ice Cream Corporation.**

Civ. A. No. 78–34–B.

United States District Court,
M. D. Louisiana.

Sept. 20, 1979.

C. James Gelpi, Director-Attorney, Louisiana Dairy Stabilization Bd., Baton Rouge, La., for plaintiff.

Michael R. Fontham, John M. Landis, Stone, Pigman, Walther, Wittmann & Hutchinson, New Orleans, La., for defendants.

E. GORDON WEST, Chief Judge.

This case is brought by the Louisiana Dairy Stabilization Board (the Board), a regulatory agency of the State of Louisiana, seeking a declaratory judgment pertaining to its powers to regulate the defendant companies, both of whom are non-residents of the State of Louisiana, and neither of whom is qualified to do business in Louisiana, or has offices or employees in this State for the conduct of business. For the following reasons, the Court concludes that under the particular facts of this case, the Board cannot extend its rules and regulations, nor the provisions of the Dairy Stabilization Law (the Act), La.R.S. 40:931.1 et seq., to cover the activities involved in this case of these defendants, and the plaintiff must be enjoined from so doing.

## FINDINGS OF FACT

1. Plaintiff, the Louisiana Dairy Stabilization Board, was created as a part of the Louisiana Dairy Stabilization Law in 1976 by Act 695 of 1976 (La.R.S. 40:931.1 et seq.)

2. The reasons for the passage of that law were stated to be:

"(6) . . . the dairy industry is peculiarly susceptible to injury resulting from price wars and a variety of disruptive trade practices that flourish in the absence of effective regulation.

\* \* \* \* \* \*

"(10) That failure to provide effective regulation of the Louisiana dairy industry will lead to a resumption of unfair methods of competition that once existed in the Louisiana dairy industry . . . and will tend to create a monopoly in the processing and distribution of milk and dairy products.

\* \* \* \* \* \*

"(14) That monopoly, disruptive trade practices, and unfair methods of competition should be prohibited in Louisiana dairy industry."

3. The specific functions of the Dairy Stabilization Board are declared to be:

"B. The board is hereby empowered and directed to prevent persons, partnerships and corporations from using unfair methods of competition, unfair or deceptive acts or practices and disruptive trade practices in the sale of milk and milk products, and the board, after notice and hearing, shall promulgate rules and regulations implementing the policy and purposes of this Subpart . . . ."

4. The Act requires any processor who sells dairy products "to a retailer or a distributor for resale in the State of Louisiana" to have a license issued by the Board.

5. The Act does not differentiate between in-state and out-of-state processors.

6. The Act authorizes the Board "to assess each processor licensed by it three cents per hundredweight on all milk equivalents used in the processing of dairy products." This assessment is declared to be for the purpose of obtaining funds for the administration and enforcement of the regulations issued by the Board.

7. In addition to licensing and assessment authority, the Board is empowered to enforce certain "obligations of licensees" which include such things as requirements for detailed record keeping; regulations as to required time of payment for products sold to retailers; restricted methods of delivery of goods; prohibitions against granting extensions of credit to retailers; prohibitions against spending excessive amounts for entertaining or making charitable contributions or gifts; regulations pertaining to use or possession of milk cases belonging to another processor; and regulations concerning furnishing of samples to consumers or signs to retailers. No distinction is made between in-state and out-of-state processors.

8. The Louisiana Milk Commission (Milk Commission) was the predecessor of the Dairy Stabilization Board. The Commission was given authority to set retail prices on dairy products.

9. During the existence of the Milk Commission, Schwegmann Giant Super Markets (Schwegmann) was purchasing dairy products from sources outside the State of Louisiana, and sued the Milk Commission, alleging that the Commission could not control prices paid for dairy products where the purchases were made outside the State of Louisiana. It was contended that this was a violation of the Commerce Clause of the United States Constitution, and also of the Fourteenth Amendment to the United States Constitution. A three judge Federal Court agreed with Schwegmann, and that Court's decision was affirmed by the United States Supreme Court. See *Schwegmann Bros. Giant Super Markets v. Louisiana Milk Commission,* 365 F.Supp.

1144 (M.D.La.—1973), aff'd. 416 U.S. 922, 94 S.Ct. 1920, 40 L.Ed.2d 279 (1974).

10. After that decision, Schwegmann entered into an agreement with Dairy Fresh, defendants in the present suit, to purchase dairy products in Mississippi and transport them to Louisiana for resale. This was objected to by the Louisiana Health and Human Resources Administration, who refused to issue a permit for the sale of Dairy Fresh products in Louisiana.

11. After extensive litigation, the state health officials were ordered to permit the importation and resale of these products in Louisiana. See *Schwegmann Bros. Giant Super Markets v. Edwards,* 323 So.2d 810 (La. 4th Cir.—1975), writ denied, 326 So.2d 503 (La.—1976).

12. In 1976 the Milk Commission was abolished and in its place the Dairy Stabilization Board was created. La.R.S. 40:931.1, et seq.

13. The new Board was not given authority to fix prices, but instead was endowed with the power to do the things hereinbefore enumerated, including the power to issue licenses, to levy assessments, and to regulate "unfair methods of competition, unfair or deceptive acts or practices and disruptive trade practices . . . ." La.R.S. 40:931.8.B.

14. After the Court ruling which permitted the importation of dairy products into the state for resale, in March of 1976, without any request therefor on the part of Dairy Fresh, the Dairy Stabilization Board delivered a license and a packet of forms to the Dairy Fresh office manager in Hattiesburg, Mississippi, who, at that time, apparently, at the request of the deliverer, signed an application for the license. Neither the plant manager nor the president of Dairy Fresh were consulted about the delivery of the license.

15. In May of 1976, Schwegmann entered into an agreement with Dairy Fresh for the purchase and importation for resale of frozen desserts. The state health officials refused to issue a permit without notification that a license had been issued by the Board.

16. When counsel for Dairy Fresh contacted the Board, he was, for the first time, informed that a license for the processing of dairy products had been issued to Dairy Fresh in March. It was then agreed that the Board would issue a license to Dairy Fresh for the processing of frozen desserts, but that Dairy Fresh would reserve its right to contest any attempt of the Board to levy assessments or in any way regulate the out-of-state sales by Dairy Fresh to Schwegmann.

17. It was not until three months after the issuance of the frozen dessert license that the Board attempted to levy the three cents per hundredweight assessment against Dairy Fresh. This occurred on August 20, 1977, when counsel for Dairy Fresh received a letter from counsel for the Board making inquiry concerning failure of Dairy Fresh to pay the assessment. Dairy Fresh, through counsel, responded that all sales to Schwegmann were out-of-state sales and thus were not subject to assessment or regulation by the Board.

18. It was not until about a year later that a complaint was filed with the Board, and on October 25, 1977, a hearing was held. When the Board contended that Dairy Fresh could not complain because it had accepted a license to process dairy products and frozen desserts, Dairy Fresh renounced its license.

19. Dairy Fresh has continued to sell to Schwegmann since 1977 without a license from the Board.

20. The three cent per hundredweight assessment provided for in the Act is in fact an assessment that is used by the Board to enforce the provisions of the Dairy Stabilization Law and is not a tax used by the State to generate revenue. Insofar as it is applicable to Louisiana processors, it is a valid assessment imposed by the State to effectuate a valid exercise of its police powers.

21. This suit was filed by the Louisiana Dairy Stabilization Board on January 27, 1978, with the Board seeking a declaratory judgment that the licensing requirements and the assessments made against the defendants are valid exercises of the Board's powers, and the defendants contending that the application of these regulations by the Louisiana Board to an out-of-state processor is constitutionally infirm as violative of the commerce clause of the United States Constitution and the Fourteenth Amendment thereto.

## CONCLUSIONS OF LAW

1. This Court has jurisdiction over this case under its federal question jurisdiction. 28 U.S.C. § 1331.

2. The Dairy Stabilization Law, which creates the Dairy Stabilization Board as an agency of the State of Louisiana, is designed to create a program of regulation for the Louisiana Dairy Industry. La.R.S. 40:931.1(17).

3. The Dairy Stabilization Law requires licensing of all processors, retailers and distributors of dairy products, and it makes it unlawful for them to operate without a license. No distinction is made between in-state and out-of-state processors. All licensed processors are required to pay an assessment of three cents per hundredweight on all milk equivalents used in the processing of dairy products used in Louisiana, regardless of whether the processor is a citizen of Louisiana or not, and regardless of where the transaction by which the Louisiana retailer acquired the products took place. La.R.S. 40:931.10 and 931.13(B).

4. While neither the Act nor the regulations of the Board exempt out-of-state processors who sell their products to Louisiana retailers from the operation of the Act, the regulations of the Board do exempt products sold by Louisiana processors to purchasers out of the state. Dairy Stabilization Board Rules and Regulations § 12.9.

5. The Court has found, as a fact, that the defendant processors completed the processing of the products here involved in states other than Louisiana, and that the sale of those products took place outside of Louisiana. The mere fact that defendants were aware of the fact that after the sale

the products were to be transported into Louisiana for resale by the retailer does not subject the processing activities conducted in Mississippi to tax or assessment by the State of Louisiana. See *American Oil Company v. Neill*, 380 U.S. 451, 85 S.Ct. 1130, 1134, 14 L.Ed.2d 1 (1965).

6. The Court is cognizant of the fact that:

"Different considerations arise in police power cases involving regulations of a foreign corporation or its products in the interest of the health, welfare, comfort and safety of the state's citizens. In such a case the court has, often explicitly, sought to balance the state's interest in the regulation, as measured by its purpose and effectiveness, against the federal interest in freedom of the commerce involved from the burden in question. This involves consideration of the measure, the extent to which the statute deals with matters of peculiarly local concern which can be adequately regulated only by the particular state, and the practical effect of the burden." *Corporate Registration: A Functional Analysis of Doing Business*, 71 Yale L.R. 575, 582.

While the three cent per hundredweight is relatively small, the same benefit to the State of Louisiana could be derived by directing assessments against in-state retailers rather than out-of-state processors, and thus avoid the direct burden, however small, on interstate commerce.

■ 7. Although Louisiana, through its Dairy Stabilization Board, may assess the processing of dairy products in the State of Louisiana, it may not project its regulations to processors located outside the state, particularly where the products involved are wholly processed outside of Louisiana and are then sold and delivered by the processor to a retailer outside of the State of Louisiana. The fact that the product later finds its way into the State of Louisiana does not alter this conclusion. *Schwegmann Bros. Giant Super Markets v. Louisiana Milk Commission*, supra.

8. The Dairy Stabilization Law itself recognizes the legal limitations on its scope. The Act provides:

"The authority of the Commissioner to regulate bulk milk and of the board to regulate dairy products moving in interstate commerce shall be construed to be as great as, but not to exceed, the limits imposed by the United States Constitution." La.R.S. 40:931.19.

The Board also recognized its limitations when it promulgated Section 12.9 of its Rules and Regulations which states that:

"No processor shall be required to pay assessments on products sold outside of this state."

■ 9. The Court therefore finds, as a matter of law, that the Commerce Clause of the United States Constitution prohibits the application of the Louisiana Dairy Stabilization Law, La.R.S. 40:931.1, et seq., and all of its provisions, and the regulations promulgated pursuant thereto by the Louisiana Dairy Stabilization Board to processors located outside of the State of Louisiana in all cases where the dairy products or the frozen dessert products involved are processed, sold and delivered outside of the State of Louisiana.

Counsel for defendants are instructed to furnish the Court with a proposed judgment to be entered in this case not inconsistent with this opinion.