LOUISIANA DAIRY STABILIZATION
BOARD, Plaintiff–Appellant,

v.

DAIRY FRESH CORPORATION and
Dairy Fresh Ice Cream Corporation,
Defendants–Appellees.

No. 80–3112
Summary Calendar.

United States Court of Appeals,
Fifth Circuit.
Unit A

Nov. 21, 1980.

C. James Gelpi, Vernon Palmer, Gerald
D. Wasserman, Baton Rouge, La., for plain-
tiff–appellant.

Stone, Pigman, Walther, Wittman &
Hutchinson, John M. Landis, Michael R.
Fontham, New Orleans, La., for defend-
ants–appellees.

Before BROWN, POLITZ and TATE,
Circuit Judges.

TATE, Circuit Judge:

The plaintiff state agency appeals from
judgment invalidating state regulation inso-
far as affecting dairy products processed,
sold and delivered out–of–state by non–
Louisiana processors. 476 F.Supp. 416
(M.D. La. 1979). The appellant, the Louisi-
ana Dairy Stabilization Board, initially filed
suit seeking a declaratory judgment, 28
U.S.C. § 2201, with respect to its powers to
regulate the defendant out–of–state proc-
essors under the Louisiana Dairy Stabiliza-
tion Law, La. R.S. 40:931.1 et seq., and the
regulations promulgated thereunder, Dairy
Stabilization Board Regs. § 1.1 et seq. The
defendants counterclaimed for a declaration
that the attempted application of the Loui-
siana provisions to them violates, inter alia,
the Commerce Clause of the United States
Constitution. The district court held that
the application of the Louisiana law and
regulations to the out–of–state transactions
between the defendant out–of–state proc-
essors and the Louisiana retailers did indeed
violate the Commerce Clause, and it entered
a judgment permanently enjoining the
Board from enforcing certain provisions of
the Louisiana Dairy Stabilization Law and
Board regulations (regarding licensing and

assessment requirements) with respect to the defendant processors' out–of–state activities. We affirm.

*Regulatory Context of Litigation*

The Louisiana Dairy Stabilization Board (hereinafter referred to as the "Board") was created by the Louisiana legislature in 1976. According to the enabling act, Dairy Stabilization Law, La. R.S. 40:931.1 et seq., regulation of the milk industry is necessary to ensure that price wars, unfair methods of competition, and disruptive trade practices do not weaken the financial condition of dairy farmers, processors, and distributors, while failure to regulate unfair competition and disruptive trade practices will tend to create a monopoly in the processing and distribution of milk and dairy products that may lead to excessive prices and inadequate supplies. Section 931.1.

In order to achieve stabilization of the dairy industry, the statute grants the Board certain powers to prevent unfair methods of competition and destructive trade practices. Section 931.8. All processors located within Louisiana and all processors who sell dairy products to a retailer or a distributor for resale in Louisiana (whether or not they are located within the state) must be licensed by the Board. Section 931.10. The records of all licensed processors are subject to inspection by the Board or its authorized representative, Section 931.11, and all licensed processors must pay an assessment of three cents per hundredweight of all milk equivalents used in the processing of their dairy products, Section 931.13 B. The statute expressly provides that the funds obtained through the assessments are to be used for the administration and enforcement of the statute and the regulations promulgated thereunder by the Board. Section 931.13 B. The Board does not have the power to regulate or establish wholesale or retail prices for dairy products. Section 931.5. However, under its authority to prevent unfair competition and disruptive trade practices, the Board has promulgated regulations prohibiting certain price differentials by retailers, Dairy Stabilization Board Regs. § 13.1.-1, and price discrimination between differ-

ent purchasers of like commodities, Regs. § 13.1.2.

In the instant suit, the Board seeks to apply its rules and regulations to the defendant out–of–state processors. Specifically, the Board contends that the processors must be licensed, and, as licensed processors, they must pay the assessments of three cents per hundredweight on all milk equivalents used in the processing of their dairy products due under the statute. The enactment makes no distinction between in–state and out–of–state processors for licensing purposes, nor does it make any such distinction in the obligations of licensees (enforceable by the Board), described by the district court as including: "requirements for detailed record keeping; regulations as to required time of payment for products sold to retailers; restricted methods of delivery of goods; prohibitions against granting extensions of credit to retailers; prohibitions against spending excessive amounts for entertaining or making charitable contributions or gifts; regulations pertaining to use or possession of milk cases belonging to another processor; and regulations concerning furnishing of samples to consumers or signs to retailers." 476 F.Supp. at 413.

*The District Court Holding Affirmed*

The district court invalidated, as offending the Commerce Clause of the federal constitution, the Louisiana requirements that the out–of–state processors obtain licenses from the Louisiana regulatory agency. The invalidation had the effect of relieving the out–of–state defendants of any obligation to pay assessments to the Board on milk processed out–of–state and sold and delivered out of Louisiana (even though sold and delivered to Louisiana purchasers and packaged and intended for retail by these purchasers in Louisiana markets), or to submit to the economic and economic record–keeping regulations of the Louisiana regulatory agency.

The district court found that the defendant processors completed the processing of the products sold to the Louisiana retailers in states other than Louisiana. Further-

more, it found that the sale and delivery of those products took place outside of Louisiana. These findings are not clearly erroneous.

■■■ Under these factual findings, the application of the Louisiana Dairy Stabilization Law and regulations to these out–of–state processors based on the out–of–state sale of their products for resale in Louisiana violates the Commerce Clause of the United States Constitution. It unreasonably burdens the flow of interstate commerce by restricting access of out–of–state suppliers to local markets in order to protect local economic interests. *Schwegmann Bros. Giant Super Markets v. Louisiana Milk Com'n.*, 365 F.Supp. 1144 (M.D.La.1973), *aff'd.* 416 U.S. 922, 94 S.Ct. 1920, 40 L.Ed.2d 279 (1974); *Baldwin v. Seelig*, 294 U.S. 511, 55 S.Ct. 497, 79 L.Ed. 1032 (1935). See generally Tribe, American Constitutional Law § 6–6, pp. 328–30 (1978).

The Board argues that the cited decisions concerned attempts at fixing the price of out–of–state products, whereas the present regulatory scheme merely involves assessment and record–keeping requirements necessary to effectuate the Board's responsibility as "an anti–trust enforcement agency" to regulate unfair methods of competition and disruptive trade practices that weaken the financial condition of dairy farmers, processors, and distributors of the Louisiana dairy industry, and that tend to create a monopoly therein. The alleged "anti–trust" purposes of the regulation are relied upon as talismanic distinction of the present statute from the statutes previously invalidated under the Commerce Clause as attempting price–regulation on out–of–state transactions.

The purported distinction is ineffectual in evading the ultimate holdings of the cited *Schwegmann* and *Baldwin* decisions. They are to the effect that, although Louisiana may have the power and right to regulate the production, processing, and distribution of milk products within the state, it has by virtue of the Commerce Clause no power to project its economic regulation–at least insofar as the purpose is to protect local economic interests–to production, processing, and sale of dairy products at places without the state. As stated in *Baldwin*, 294 U.S. at 527, 55 S.Ct. at 502:

> What is ultimate is the principle that one state in its dealings with another may not place itself in a position of economic isolation. Formulas and catchwords are subordinate to this overmastering requirement. Neither the power to tax nor the police power may be used by the state of destination with the aim and effect of establishing an economic barrier against competition with the products of another state or the labor of its residents. Restrictions so contrived are an unreasonable clog upon the mobility of commerce. They set up what is equivalent to a rampart of customs duties designed to neutralize advantages belonging to the place of origin. They are thus hostile in conception as well as burdensome in result.... The importer must be free from imposts framed for the very purpose of suppressing competition from without and leading inescapably to the suppression so intended.

*Baldwin's* principle that one state may not burden interstate commerce in order to protect local economic interests from out–of–state economic competition has been affirmed in the succeeding decades. *H. P. Hood & Sons v. Du Mond*, 336 U.S. 525, 69 S.Ct. 657, 93 L.Ed. 865 (1949), for instance, cited with approval its "principle that the State may not promote its own economic advantages by curtailment of burdening of interstate commerce," 336 U.S. at 532, 69 S.Ct. at 662, and noted a "distinction" that applies to many of the decisions relied upon presently by the appellant Board "between the power of the State to shelter its people from menaces to their health or safety and from fraud, even when these dangers emanate from interstate commerce, and its lack of power to retard, burden or constrict the flow of such commerce for their economic advantage ...." 336 U.S. at 533, 69 S.Ct. at 662.

Most recently, in *Philadelphia v. New Jersey*, 437 U.S. 617, 98 S.Ct. 2531, 57

L.Ed.2d 475 (1978), the court noted that where legislative objectives *other* than economic protectionism of its people from competition from interstate trade are concerned, it has utilized a flexible balancing test that may permit tolerating the burden on interstate commerce in the light of the nature of the legitimate local purpose and the degree of the burden and whether the local interest could be promoted with lesser impact on interstate activity, citing *Pike v. Bruce Church, Inc.*, 397 U.S. 137, 90 S.Ct. 844, 25 L.Ed.2d 174 (1970). However, citing both *Hood & Sons* and *Baldwin*, the court further noted, in striking down a restriction on importation of waste substances into the state:

> The opinions of the Court through the years have reflected an alertness to the evils of "economic isolation" and protectionism, while at the same time recognizing that incidental burdens on interstate commerce may be unavoidable when a State legislates to safeguard the health and safety of its people. Thus, where simple economic protectionism is effected by state legislation, a virtually *per se* rule of invalidity has been erected.

437 U.S. at 620, 98 S.Ct. at 2535.

These holdings and teachings of the Supreme Court are dispositive of most of the appellant Board's contentions that its attempt at economic regulation of out–of–state economic activity should not be invalidated under the Commerce Clause. The Board essentially contends that the burden on interstate commerce is justified by the legitimate local purpose of preventing local economic disruption and the development of monopolies affecting the local market; whereas the Supreme Court has held that the Commerce Clause prevents a state from burdening interstate commerce for the purpose specified, i. e., to restrict economic competition from without the state.

*The Board's Additional Contentions*

On appeal, the Board additionally suggests numerous decisions that it contends require a contrary resolution of the Commerce Clause issue. However, the cases relied upon are distinguishable because: either (1) the state laws upheld were not applied extraterritorially, or (2) the state interest sought to be advanced was the protection of public health and safety rather than (as here) the economic stability of in–state industry.

■ The Board further contends that the trial court erred in denying its motion for a partial new trial. The motion was based on statements by the trial judge, which allegedly misled counsel for the Board, who, as a result, failed to introduce certain evidence concerning the defendants' "doing business" in Louisiana.[1] The trial judge did not abuse his discretion in denying the Board's motion for a partial new trial. The record reveals that the Board did in fact introduce evidence through examination of the defendants' president pertaining to the extent that defendants were "doing business" in the state and its character. The record does not support the Board's contention that it was misled by the district court's comments. Further, as the trial court noted in denying the new–trial motion, the issue of whether or not the defendants had sufficient Louisiana contacts so as to be "doing business" in the state for jurisdictional purposes, is not of weighty relevance, if any, to the determination of the actual issue before the court: whether or not the Louisiana regulatory agency could apply its licensing and assessment regulations to the defendant out–of–state processors with regard to dairy products processed, sold, and delivered out–of–state.

1. In its brief (p. 3), the appellant Board summarizes the nature of the "doing business" evidence it relies upon:

> Defendants have engaged, and do engage, in numerous commercial activities in the State of Louisiana. These activities include making sales calls, attending industry meetings, purchasing and picking up raw products, placement of equipment and placement of merchandise in retail outlets for sale to Louisiana consumers as well as other activities normally associated with the carrying on of commerce or doing of business. While not the only substantial business being carried on in Louisiana by defendants, the largest-single account is Schwegmann Brothers Giant Super-Markets of New Orleans, Louisiana.

*Conclusion*

For the reasons stated, we AFFIRM the trial court judgment.