COLE, Judge.
The main issue presented is whether or not La.R.S. 40:931.13 D (also referred to as the amendment to rule 12.9 of the Dairy Stabilization Board) is unconstitutional as a restraint on interstate commerce. After carefully considering the matter we conclude the statute, as applied, is unconstitutional. We therefore reverse the decision of the trial court on that issue.
In order to understand fully this controversy it is necessary that we supply the following background information. The purpose of the Dairy Stabilization Board (herein referred to as the Dairy Board) is set forth in La.R.S. 40:931.8 B as follows:
*916 “The board is hereby empowered and directed to prevent persons, partnerships and corporations from using unfair methods of competition, unfair or deceptive acts or practices and disruptive trade practices in the sale of milk and milk products, and the board, after notice and hearing, shall promulgate rules and regulations implementing the policy and purposes of this Subpart. . . . ”
Under the terms of 931.13 B the Dairy Board is to assess processors licensed by it three cents per hundredweight on all milk equivalents used in the processing of dairy products. The purpose of the assessment is to “obtain funds for the administration and enforcement of the regulations issued by the board.... ”
Plaintiffs are the owners and operators of several supermarkets in the state of Louisiana. Both buy milk products from Dairy Fresh Corporation of Mississippi and Schwegmann also purchases frozen dessert products from Dairy Fresh Corporation of Alabama. These products are sold and delivered to the plaintiffs outside the state of Louisiana and are then sold at retail in plaintiffs’ Louisiana stores.
The legal disputes between Schwegmann and the Louisiana Milk Commission (the predecessor to the Dairy Board) began in 1973 when the federal district court held the Milk Commission could not control the prices paid for dairy products purchased out of state. Schwegmann Bros. Giant Super Markets v. Louisiana Milk Com’n, 365 F.Supp. 1144 (M.D.La.1973), aff’d 416 U.S. 922, 94 S.Ct. 1920, 40 L.Ed.2d 279 (1974).
Another dispute arose when the Louisiana Department of Health and Human Resources refused to issue a permit for the sale of Dairy Fresh products in Louisiana. The state court ultimately ordered DHHR to issue the permits. Schwegmann Bros. Giant Super Markets v. Edwards, 323 So.2d 810 (La.App. 4th Cir. 1975), writ denied, 326 So.2d 503 (1976).
The next dispute (and a matter closely related to the present case) was whether or not the Dairy Board had the power to assess the out-of-state processors under La. R.S. 40:931.13 B. The Dairy Board filed suit seeking declaratory judgment decreeing the assessment and attempts by the Board to license the out-of-state processors were valid exercises of the board’s power. The federal district court ruled against the Dairy Board and stated the assessments were violative of the Commerce Clause[1] of the United States Constitution. The court noted the sale of the products took place outside of Louisiana and the fact that the products were ultimately transported into Louisiana for resale did not give the Dairy Board the right to assess the out-of-state processors. La. Dairy Stabilization Bd. v. Dairy Fresh Corp., 476 F.Supp. 416 (M.D.La.1979), aff’d 631 F.2d 67 (5th Cir. 1980). This decision was very recently affirmed by the United States Supreme Court.
The opinion in the case just cited was rendered on September 20, 1979. On July 9, 1979 (after trial), the Dairy Board issued a notice of intent to amend its rule 12.9 by adding the following provision:
“In the event any processor refuses or fails to obtain a license or refuses or fails to pay this assessment, the Board may, collect same from the licensed buyer of said dairy products as the Agent for said processor or as a user of said products.”
The rule was formally adopted by the Dairy Board on August 28, 1979 and was later incorporated into the revised statutes (as La.R.S. 40:931.13 D) in the 1980 regular session of the legislature. The words of the amended statute read exactly as the words of the rule, the only change being that the “Commissioner,” rather than the “Board” was given the power to collect the assessment. The statute became effective on September 12, 1980.
The plaintiffs filed suit against the Dairy Board, seeking a declaratory judgment decreeing this rule and statute to be unconstitutional as a violation of the Commerce Clause. Plaintiffs further sought injunc-tive relief requiring the Dairy Board to issue all retail licenses applied for by Del- *917 champs which were withheld by the Board due to the failure to pay the assessments. The Board filed a reconventional demand praying the rule be upheld, Delchamps be enjoined from selling dairy products, and both Delchamps and Schwegmann be ordered to pay assessments to the Board in accordance with the rule.
The trial court held in favor of the Dairy Board, finding the rule to be constitutional. In its written reasons the court acknowledged it was “obvious that the amendment to the Rule was adopted to evade the impact of the decision in Louisiana Dairy Stabilization Board v. Dairy Fresh Corporation and Dairy Fresh Ice Cream Corporation,” but found the present situation involved different circumstances. The court noted the assessment was not on the out-of-state processors but was on the “ultimate use of the product in the State of Louisiana.” It observed the rule (and amendment) made no reference to out-of-state processors and would presumably be applied to any retailer buying from an in-state processor who failed to pay the assessment.
The trial court ordered the Dairy Board to grant Delchamps all licenses applied for prior to the effective date of La.R.S. 40:931.13 D (September 12, 1980). It reasoned before that time the Board had no statutory authority for collecting the assessment from the retailer and therefore had no right to withhold the licenses because of the processor’s refusal to pay. Further, the court enjoined both plaintiffs from selling milk products until all assessments from September 12, 1980, were paid. From this judgment the plaintiffs appealed suspensively and the defendant appealed devolutively.
We agree with plaintiffs’ argument that this law does serve as a discriminatory burden upon interstate commerce. We concede that on its face the law seems to apply equally to retailers who purchase from instate processors and retailers who purchase from out-of-state processors. But an examination of the record reveals there was no evidence put forth showing an attempt by the Dairy Board to ever collect this assessment from a retailer who purchases from an in-state processor, and an examination of the law as a whole indicates it is very unlikely there will ever be any attempt to do so.
La.R.S. 40:931.10 A states it shall be unlawful for a processor to buy bulk milk without being licensed as a processor by the commissioner, if that processor operates a plant located in this state. Subsection B states it is unlawful for an in-state processor to sell dairy products without being licensed as a processor. Subsection G specifies any licenses issued may be suspended by the Board for failure to comply with “this Subpart or with the regulations issued by the board.” The matter of assessments of processors is then set forth in 931.13. Reading these statutes as a whole it is clear the Dairy Board has the power to revoke or suspend the license of any in-state processor who fails to pay the assessment and it would be illegal for that processor to continue to sell dairy products without such license. Although 931.13 D gives the Board the option of collecting the assessment from the retailer, common sense dictates the more logical and convenient course of action would be for the Board to suspend or revoke the license of the processor who refused to pay.[2] In any case involving an in-state processor it is very doubtful collection at the retail level would ever be pursued. This highly inconvenient and burdensome method is likely to be employed only in those situations where the Board is unable to collect from the processor, i.e., when the processor is located out of the state.
The gist of plaintiffs’ argument is this statute creates a burden on the retailer dealing with an out-of-state processor that is not borne by the retailer dealing with an in-state processor. The result is that the retailer is discouraged from dealing with the out-of-state entity. We must agree *918 that as the statute is presently applied, the free flow of interstate commerce is discrim-inatorily burdened. A law which burdens the flow of interstate commerce by restricting access of out-of-state suppliers to local markets is invalid. La. Dairy Stabilization Bd. v. Dairy Fresh Corp., supra. The retailers in the state who must bear the assessment are those who buy from out-of-state processors. The plaintiffs are apparently the only two such retailers. Aside from the monetary burden of actually paying the assessment, the retailer undoubtedly bears certain administrative burdens such as providing the Board with various records, scheduling appointments to allow the Board to examine the books, assigning certain personnel to tend to this task, etc. None of these chores need be performed by the retailer down the street who deals with an in-state processor. The long term effect of the current application of subsection D is that any retailer would be discouraged from engaging in interstate commerce because of the added burden involved. Thus, the statute results in local enterprises being favored at the expense of out-of-state businesses. This is certainly the result the commerce clause was designed to prevent. See, Boston Stock Exchange v. State Tax Commission, 429 U.S. 318, 97 S.Ct. 599, 50 L.Ed.2d 514 (1977).
There is another aspect of this case which mitigates against the constitutionality of La.R.S. 40:931.13 D as applied against only those retailers who buy from out-of-state processors. The federal court held clearly the Dairy Board has no right to assess the out of ■ state processor. Yet this amendment, as admitted by the trial court, clearly circumvents that ruling by simply providing a different collection method. (It allows the Board to collect from the retailer rather than the processor.) Since the out-of-state processor is not subject to assessment by the Dairy Board, incongruity is apparent in basing the retailer’s liability on the out-of-state processor’s failure to pay this (unenforceable) assessment.
We would have no quarrel with this amendment if it were to apply across the board to all retailers. But it only applies to retailers who deal with processors who have not paid the assessment, which in all likelihood will always be out-of-state processors. We find it insufficient that the literal terms of the amendment would allow for the collection from a retailer dealing with an instate processor, for reasons discussed above. It is clear to us that the purpose of the rule is to avoid the prohibition set forth by the federal court in Dairy Stabilization Board, supra.
Admittedly, the Dairy Board can assess all in-state retailers but they cannot base the assessment on the failure of an out-of-state processor, over whom they have no power to assess, to pay the same assessment. This result necessarily follows so long as the Dairy Board can enforce payment against the in-state processor thereby eliminating as a practical matter any assessment against their retailers. The present application of the law leaves a discriminatory difference between in-state retailers depending upon whether or not they buy their dairy products from in-state processors or from out-of-state processors. If the Dairy Board chooses to assess directly all retailers in Louisiana without regard to the source of their dairy products, there would be no discrimination. The practical result here, since in-state processors would pay the assessment under penalty of losing their licenses, is that only those retailers who buy from out-of-state processors will have to pay the assessment. It is thereby discriminatory as among retailers. The constitutional focus is on the retailers. A discriminatory analysis under the Commerce Clause must consider similarly situated businesses. See, Halliburton Oil Well Cementing Co. v. Reily, 373 U.S. 64, 83 S.Ct. 1201, 10 L.Ed.2d 202 (1963); Best & Co. v. Maxwell, 311 U.S. 454, 61 S.Ct. 334, 85 L.Ed. 275 (1940).
We find untenable the argument of the Dairy Board that the disputed rule and statute are rendered valid because they make no mention of locality of processors and because they apply equally to retailers regardless of whether they purchase from in-state or from out-of-state processors. *919 This argument overlooks the question of whether the provisions have been applied in a non-discriminatory manner. It is apparent from the record they have been applied in a discriminatory fashion against the plaintiffs. Indeed, the Dairy Board does not assert the regulation has ever been applied to a retailer who buys dairy products from within the state. We agree with plaintiffs that so long as the Dairy Board has the power to collect assessments directly from in-state processors the regulations will never be so applied.
We find the assessment has been selectively applied to plaintiffs and such selective application constitutes a discriminatory burden upon interstate commerce in violation of the Commerce Clause of the United States Constitution. Accordingly, we declare and decree La.R.S. 40:931.13 D and the companion amendment to Rule 12.9 of the Dairy Stabilization Board, as applied, to be unconstitutional.
The judgment of the trial court is reversed insofar as it upheld the validity of Rule 12.9 in its application to plaintiffs and insofar as it enjoined and prohibited plaintiffs from selling dairy products until all assessments after September 12, 1980, have been paid. The judgment in all other respects is affirmed. All costs permitted by law are assessed against the defendant.
AFFIRMED IN PART; REVERSED IN PART; and RENDERED.
LOTTINGER, J., concurs and assigns written reasons.
COVINGTON, J., dissents.
CHIASSON, J., concurs for reasons as-, signed by LOTTINGER, J.

. Art. 1, § 8, cl. 3.

. We note there are obvious advantages (for the Board) in dealing with the assessments at the processing level, where there are relatively few businesses involved, than at the retail level, where there are numerous stores from which to collect the assessments.